UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA
OMAHA DIVISION

DONOVAN MIDDLETON, HARVESTER )
NUTRITION, LLC, EDGAR ROJAS, CHRISTINA )
SOARES, HERMAN HOURIE, NUTRITION )
CASTLE, LLC, BRIGHT FUTURE HOLDINGS, )
LLC, VIVIFY, INC., KATHERINA JERAK, )
M.G. NUTRITION, LLC, AND WARRIOR )
FITNESS & NUTRITION, LLC, )
                                )
       Plaintiffs, )
                                )      Case Number: 8:18-CV-115
-vs- )
                                  )
COMPLETE NUTRITION FRANCHISING, LLC, )
                                  )
       Defendant. )

## COMPLAINT

Come now Plaintiffs and for their causes of action against Defendant state as follows:

## PARTIES

1.  Plaintiff Donovan Middleton is a citizen and resident of the State of Nevada. Plaintiff

Donovan Middleton executed a franchise agreement with Defendant on December 18th,

2015 for a Complete Nutrition franchise located at 7445 S. Durango Drive, Suite 101,

Las Vegas, NV 89113. Plaintiff Donovan Middleton assigned the franchise agreement

to Plaintiff, Harvester Nutrition, LLC, a Nevada Limited Liability Company on June 15th,

2016.

2.  Plaintiff Harvester Nutrition, LLC is a Nevada limited liability company. Plaintiff

Harvester Nutrition, LLC executed an Agreement of Understanding Granting Multiple

Franchises with Defendant on February 10th, 2017.

3.  Plaintiff Harvester Nutrition, LLC executed a franchise agreement with Defendant on

June 28th, 2017 for a Complete Nutrition franchise located at 2502 Highway 6 & 50, Suite 400, Grand Junction, CO  81505.

4.  Plaintiff Harvester Nutrition, LLC executed a franchise agreement with Defendant on June 28th, 2017 for a Complete Nutrition franchise located at 19 South Stephanie Street, Suite 180, Henderson, NV  89012.

5.   Plaintiffs Edgar Rojas and Cristina Soares are citizens and residents of the State of Florida.  Plaintiffs Edgar Rojas and Cristina Soares executed a franchise agreement with Defendant on March 10th, 2016 for a Complete Nutrition franchise located at 2812 Weston Road, Weston, FL 33331.

6.  Plaintiff Herman Hourie is a citizen and resident of the State of Florida.  Plaintiff Herman Hourie executed a franchise agreement with Defendant on January 29th, 2016 for a Complete Nutrition franchise located at 10196 Royal Palm Blvd, Pompano Beach, Florida 33065.  Plaintiff Herman Hourie assigned the franchise agreement to Plaintiff, Nutrition Castle, LLC, a Florida Limited Liability Company on April 4th, 2016.

7.   Plaintiff Bright Future Holdings, LLC is a Florida limited liability company.  Plaintiff Bright Future Holdings, LLC executed a franchise agreement with Defendant on April 5th, 2017 for a Complete Nutrition franchise located at 1719 Boyscout Drive, Suite 4, Fort Myers, Florida 33907.

8.  Plaintiff Vivify, Inc. is a Florida corporation.  Plaintiff Vivify, Inc. executed a franchise agreement with Defendant on April 5th, 2017 for a Complete Nutrition franchise located at 1860 NE Pine Island Road, Suite 215, Cape Coral, Florida 33909.

9.  Plaintiff Vivify, Inc. executed a franchise agreement with Defendant on November 9th, 2017 for a Complete Nutrition franchise located at 2000 Sam Rittenberg Blvd., Suite 120,

Charleston, South Carolina 29407.

10. Plaintiffs Katherina Jerak is a citizen and resident of the State of Florida.  Plaintiff
Katherina Jerak executed a franchise agreement with Defendant on April 20th, 2016 for a
Complete Nutrition franchise located at 10990 Biscayne Blvd, Unit 15, Miami, Florida
33161.

11. Plaintiff M.G. Nutrition, LLC is a Utah limited liability company.  Plaintiff M.G.
Nutrition, LLC executed a franchise agreement with Defendant on January 31st, 2011, for
a Complete Nutrition franchise located at 10400 S. Redwood Road, Suite E-4, South
Jordan, Utah 84095.

12. Plaintiff M.G. Nutrition, LLC executed a franchise agreement with Defendant on January
31st, 2011 for a Complete Nutrition franchise located at 10481 South State Street, Sandy,
Utah 84070.

13. Plaintiff M.G. Nutrition, LLC executed a franchise agreement with Defendant on October
31st, 2011 for a Complete Nutrition franchise located at 51 NW State Road, Suite 102,
American Fork, Utah 84003.

14. Plaintiff M.G. Nutrition, LLC executed a franchise agreement with Defendant on
September 5th, 2012 for a Complete Nutrition franchise located at 6935 South Park
Centre Drive, Salt Lake City, Utah 84121.

15. Plaintiff M.G. Nutrition, LLC executed a franchise agreement with Defendant on
September 1st, 2016 for a Complete Nutrition franchise located at 15 River Road South,
Suite 320, St. George, Utah 84790.

16. Plaintiff M.G. Nutrition, LLC executed a franchise agreement with Defendant on
September 8th, 2016 for a Complete Nutrition franchise located at 530 West 500 South,

Suite A-2. Bountiful, Utah 84010.

17. Plaintiff Warrior Fitness & Nutrition, Inc. is an Indiana corporation.  Plaintiff Warrior

Fitness & Nutrition, Inc. executed a franchise agreement with Defendant on March 15th,

2017 for a Complete Nutrition franchise located at 1001 N SR 135, B7, Greenwood,

Indiana 46142.

18. Defendant Complete Nutrition Franchising, LLC is a Nebraska limited liability company

organized on August 7th, 2009 with its principal place of business in Omaha, Nebraska

(hereinafter referred to as "Complete Nutrition").

## JURISDICTION

19. This Court has subject matter jurisdiction over Plaintiffs' claims against Defendant

pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendant are citizens of different

states and the amount in controversy exceeds $75,000.00.

20. Jurisdiction in this court is proper as the parties consented to the jurisdiction of this Court

under the terms of the franchise agreements existing between the parties.

## Introduction

21. Complete Nutrition was founded in 2004 by Cory Weidel who had been a franchisee of

15 GNC Nutrition stores and was the owner of NDS Nutrition which sold nutritional

supplements to other GNC franchisees.

22. Complete Nutrition, Inc. was incorporated as a South Dakota corporation on March 5th,

2005 (hereinafter referred to as "Complete Nutrition, Inc. – SD").

23. In 2007, Ryan Zink became a partner in Complete Nutrition while serving as president of

NDS Nutrition.

24. On July 17th, 2007 "Complete Nutrition, Inc.- SD" was reincorporated as a Nebraska

corporation (hereinafter referred to as "Complete Nutrition, Inc. – NE").

25. "Complete Nutrition, Inc. – NE" was the franchisor of Complete Nutrition stores from 2007 through August of 2009.

26. In August of 2009, "Complete Nutrition, Inc. – NE" changed its name to Complete Nutrition Holdings, Inc.

27. In August of 2009, Defendant Complete Nutrition Franchising, LLC was incorporated in the State of Nebraska with its principal place of business in Omaha, Nebraska and formed as a wholly-owned subsidiary of Complete Nutrition Holdings, Inc.

28. In August of 2009, Complete Nutrition Corporate Stores, LLC was formed in Nebraska and owns and operates Complete Nutrition stores.

29. In August of 2009, R2 Distribution, LLC (f/k/a Complete Nutrition Wholesale, LLC) was formed in Nebraska and distributes many of the products the franchisees must carry in their stores.

30. In December of 2011, Complete Nutrition Franchise Holdings, Inc. was incorporated in the State of Nebraska and became the parent company of Defendant in January of 2012. Complete Nutrition Franchise Holdings, Inc. converted to a limited liability company under Nebraska law in December of 2015 to Complete Nutrition Franchise Holdings, LLC.

31. In January of 2012, Complete Nutrition Holdings, Inc. changed its name to CR Holdings, Inc. which was converted to a limited liability company under Nebraska law in December of 2015 to CR Holdings, LLC.

32. CR Holdings, LLC is the parent company of Complete Nutrition Corporate Stores, LLC and R2 Distribution, LLC and the former parent of the Defendant.

33. Complete Nutrition Franchise Holdings, LLC is the parent company of Defendant.

34. In December of 2015, Dominus Health Intermediate Holdco, LLC ("DHIH") became the parent company of Complete Nutrition Franchise Holdings, LLC and CR Holdings, LLC.

35. DHIH is wholly owned by Dominus Health Holdings, LLC ("DHH") who is, in turn, owned by Dominus Health Holdings Purchaser, LLC ("DHHP").

36. In December of 2015, Dominus Health Holdings Purchaser, LLC purchased 70% of the equity interest of Defendant's parent company.

37. Upon information and belief, that at the time DHHP acquired controlling interest, it, by and through its parent companies, obtained $25.1 million dollars in financing from Monroe Capital, LLC in order to acquire CR Holdings, LLC and Complete Nutrition Franchise Holdings, LLC.

38. That sometime in 2017, DHHP and/or its parent companies defaulted on its loan from Monroe Capital, LLC and, subsequently, Monroe Capital, LLC assumed the controlling interest of CR Holdings, LLC and Complete Nutrition Franchise Holdings, LLC from DHHP and/or its parent companies.

39. Defendant Complete Nutrition Franchising, LLC is a franchisor of retail stores offering nutritional supplements, health and beauty products and other related items to the general public using the "Complete Nutrition" trade name, trademark and system of operating procedures.

40. Defendant sells Complete Nutrition franchises throughout the United States.  To date, Defendant has approximately 150 franchises.

41. Defendant continues to grant franchises in the nutritional supplements, health and beauty products industry.

42. All Plaintiffs are and/or were franchisees of Defendant.

## ALLEGATIONS COMMON TO ALL COUNTS

43. Complete Nutrition was formed in August of 2009 and began awarding Complete Nutrition franchises.

44. In order to sell franchises, Complete Nutrition had/has to comply with Federal and State franchising rules.   Principal among these is the Federal Trade Commission franchise disclosure trade regulation rule, the "FTC Rule."

### I.      FTC Rule

45. The Commission promulgated the original Franchise Rule on December 21, 1978.  Based upon the original rulemaking record, the Commission found widespread deception in the sale of franchises and business opportunities through both material misrepresentations and nondisclosures of material facts.  Specifically, the Commission found that franchisors and business opportunity sellers often made material misrepresentations about: the nature of the seller and its business operations, the costs to purchase a franchise or business opportunity and other contractual terms and conditions under which the business would operate, the success of the seller and its purchasers, and the seller's financial viability. The Commission also found other unfair or deceptive practices pervasive: franchisors' and business opportunity sellers' use of false or unsubstantiated earnings claims to lure prospective purchasers into buying a franchise or business opportunity, and franchisors' and business opportunity sellers' failure to honor promised refund requests.  The Commission concluded that all of these practices led to serious economic harm to consumer.

46. To prevent deceptive and unfair practices in the sale of franchises and business

opportunities and to correct consumers' misimpressions about franchise and business opportunity offerings, the Commission adopted the original Franchise Rule which was later amended after a regulatory review in 1995.

47. The FTC Act defines an unfair act or practice as one that is "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. 45(n).

48. The FTC Rule is designed to require sellers of franchises to provided prospective investors with the information they need to make an informed investment decision.  The FTC Rule permits franchisors to use a uniform disclosure format which has been adopted by every state known as the "Franchise Disclosure Document" or "FDD" (formerly known as "Uniform Franchise Offering Circular" or "UFOC").  Each topic of disclosure in a FDD is referred to as an "Item" numbered 1 to 23 16 CFR Part 436.5.  Some of the most basic Items are the following:

49. Item 5 mandates disclosure of initial fees.  Initial fees means all fees and payments, or commitments to pay, for services or goods received from the franchisor or any affiliate before the franchisee's business opens.

50. Item 6 mandates detailed disclosure of all other fees payable by the franchisee to the franchisor or its affiliates or that the franchisor or its affiliates impose or collect in whole or in part for a third party including but not limited to royalties, fees for additional training or assistance, advertising, cooperatives, accounting, and inventory.

51. Item 7 requires the franchisor to describe in detail the expenditures the franchisee should anticipate making on or before the commencement of business operations.  The franchisor must be able to support its estimate from the actual experience of its

franchisors.  Fern, Costello and Asbill, Vol. 1 *Franchising Law Practice and Forms,* at 6-15 Specialty Technical Publishers (2005).

52. Item 8 requires disclosure of any restrictions imposed by the franchisor on the franchisee's purchase of products and services.   Franchisors must disclose the franchisee's obligations to purchase or lease, including but not limited to, goods, services, supplies, fixtures, equipment, inventory, and computer hardware and software related to establishing or operating the franchised business either from the franchisor, its designee, or suppliers approved by the franchisor or under the franchisor's specifications.  The franchisor must also disclose whether it or its affiliates will derive revenue or other material consideration from required purchases by franchisees.   If an obligation is imposed in practice, disclosure must be made, even if there is no contractual requirement.  *Id.*

53. Item 12 concerns disclosure of a specific location or territory granted to the franchisee.

54. Item 19 concerns "earnings claims" or representations of a franchisee's prospective financial performance.  While the FTC permits a franchisor to make earnings claims (though most reputable franchisors do not), the FTC Rule prohibits the making of earnings claims *except* as part of a detailed disclosure in Item 19. 16 C.F.R.  436.5(s).  Earnings claims in an advertising brochure, in a slide presentation, in a verbal sales presentation or on the back of any envelope, are prohibited.  Vol. 1 *Franchising Law Practice and Forms*, at 6-23.

55. Item 20 requires the franchisor to fully disclose information concerning its current and former franchisees, including the number of franchisees whose ownership was transferred or whose franchise was canceled, terminated, or not renewed or have ceased doing

business in the system.  A pattern of abandonment, sales, terminations and non-renewals indicates a sick franchise.

## II.  The Timing of Federal Disclosure

56. In addition to providing a format for disclosures, the FTC Rule specifies when a disclosure document must be given to the prospective franchisee.  Such timing requirements are intended to ensure that franchisees have a "cooling off" period in which to evaluate the disclosure document before paying any monies to the franchisor and before executing agreements binding on the prospective franchisee.

57. Under the Rule, the prospective franchisee must be provided a disclosure document upon the *earliest* to occur of any of the following three events:

    a.  The first face to face meeting with a franchisee;

    b.  10 business days prior to the execution of a franchise agreement; or

    c.  10 business days prior to payment by a prospective franchisee.

58. Violations of the FTC Rule are considered unfair or deceptive acts within the meaning of Section 5 of the Federal Trade Commission Act.

## III.  State Disclosure Laws

59. The FTC Rule does not preempt state disclosure laws to the extent that they provide greater protection that it does.  Several do, including Nebraska, Indiana, and Florida as set forth below.

## IV.  Complete Nutrition Sales Efforts

60. Complete Nutrition's sales pitch was hard and contained numerous misrepresentations intended to be relied upon by the potential franchisees, including Plaintiffs.

61. The Plaintiffs in this case each had an interest in owning a franchise and, at some point,

became specifically interested in a Complete Nutrition franchise.

62. As part of their investigation, the Plaintiffs visited Complete Nutrition's website.  The website boasted the accomplishments of Complete Nutrition and its franchisees, the potential success of a Complete Nutrition franchise, favorable magazine articles which boasted the success of Complete Nutrition, including, but not limited to, the number of locations and a booming industry, average gross sales of over $800,000, and even went as far to claim immunity from an unstable economy.  While the content has changed over the years, the general concept is the same, and it was the website, reinforced with verbal sales pitches, that enticed Plaintiffs to purchase a Complete Nutrition franchise(s).

63. Among other various representations, written and verbal, Complete Nutrition represented to each Plaintiff that it would provide them with opening support, training, ongoing support, marketing, internal and external promotions to generate business, advertising, brand maintenance, proprietary products, a proven operating system, and more.  These representations were made to and relied upon by Plaintiffs in their decision to purchase a Complete Nutrition franchise(s).

64. For instance, Complete Nutrition, by and through its representatives and its own website, boasted information, including but not limited to, the following:

    a. "Join the $8.4 Billion weight-loss and sports nutrition industry…Just as our innovative products prepare our customers to achieve success in their personal goals, our philosophies and proven systems help our franchisees to achieve professional success by turning their passion into profits."  (Exhibit 1)

    b. "Excellent earnings potential. Quick ramp-up. Item 19 with highest average revenues in the industry. $8.4 B Growing Industry. Personally-rewarding business

helping others. Excellent, unique, experiential, proprietary products. 67% of our eCommerce sales are given to our franchisees – We don't compete with our franchisees. We seek our success through the success of our franchisees – Royalty incentive programs." (Exhibit 1)

c.  "THE BEST IN A BOOMING INDUSTRY."  (Exhibit 2)

d.  "A SYSTEM BUILD TO HELP YOU SUCCEED." (Exhibit 2)

e.  "BECOME A FRANCHISE OWNER IN A BOOMING INDUSTRY- $812,068 Average Gross Sales" (Exhibit 2)

f.  "Unique Business Model" (Exhibit 3)

g.  "Franchisee Focused: We give 67% of all ecommerce profits to our franchisees! Unlike other brands.  Complete Nutrition does not compete with our franchisees via online or company stores.  Everything we do is to make our franchisees successful."  (Exhibit 3)

h.  "Complete Nutrition offers a combination of profitability and long-term sustainability, with attractive cost of entry, opportunity for exclusive territories, and comprehensive corporate support in an industry segment that continues to soar." (Exhibit 4)

i.  "Despite an unstable economy, health stores and weight loss services have been and continue to be on the rise." (Exhibit 5)

j.  "Advanced Operations, Advanced Support.  Staying ahead of the curves takes dedicated preparation and maintenance.  We provide both for our franchisees." (Exhibit 5)

k.  "Training: - "Become Complete" University – New franchisee training at home

office – Online support portal – Extensive in-store training – Ongoing field

operation support." (Exhibit 5)

l.   "Marketing: - Radio print and TV advertising – Direct mail campaigns – Outdoor

advertising and branding – Community events and partnerships – Email and

online campaigns – In-store promotions and events." (Exhibit 5)

V.   Opening and Operating a Complete Nutrition Franchise

65. As a prospective franchisee, Plaintiffs relied on information contained in the Franchise

Disclosure Document (hereinafter referred to as "FDD") and/or many other

representations made to them by Complete Nutrition at their peril.  Most franchisees

discovered that upon opening and operating their location, the numbers contained in the

FDD and/or those figures otherwise represented to them were grossly underestimated,

overestimated, and/or inaccurate.

66. Once a prospect signed a franchise agreement and had received their financing, Complete

Nutrition provided virtually none of the services represented to them including those

normally expected from a franchisor and those provided to them in the franchise

agreements.


VI.   Franchisor's Responsibilities Under Franchise Agreement

67. Under the franchise agreements signed by each and every Plaintiff herein, the franchisor

agreed to assume certain responsibilities.

68. These responsibilities include, but were not limited to, initial training, ongoing and

supplemental training, general guidance, advertising, marketing, confidential information

and the processing, developing, and acquiring of confidential information, and

maintaining the goodwill associated with the confidential information, along with

providing knowledge, know-how and expertise.

69. In general, the Franchisor assumed the duty to maintain, monitor, advise, advance, protect, market, and more.

70. Plaintiffs never received ongoing support, know-how, and/or expertise.

71. Plaintiffs received minimal advertising in comparison to the millions of dollars a year they contributed to an advertising budget.

72. Part of maintaining the brand, includes providing care, support, and commitment to the franchisees that are the cornerstone of brand recognition.  Without franchisees, Complete Nutrition could never have built the brand to which it claims all rights.

73. Had Plaintiffs been aware of the lack of support, commitment, maintenance, and general good faith of Complete Nutrition, they would have never executed a franchise agreement nor invested substantial amounts of time and money.

<u>COUNT 1: DONOVAN MIDDLETON & HARVESTER NUTRITION, LLC<br>BREACH OF CONTRACT</u>

COMES NOW, Plaintiffs and for their cause of action against Defendants, state as follows:

74. Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

75. That Plaintiffs and Defendant entered into a written franchise agreement(s) concerning the operation of their store(s).

76. That pursuant to that franchise agreement(s), Defendant agreed to provide the following, including but not limited to:

    a.  Ongoing Training;

b.  Ongoing Support;

c.  General Guidance;

d.  Maintenance; and

Advertising.

77. That Defendant has failed to meet its obligations under the franchise agreement.

78. That as a direct and proximate result of the breach of Defendant as aforesaid, Plaintiffs sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended, and for such other relief that the Court deems just and proper.

<u>COUNT 2: DONOVAN MIDDLETON & HARVESTER NUTRITION, LLC<br>BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING</u>

COMES NOW, Plaintiffs and for their cause of action against Defendants, state as follows:

79. Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

80. That Plaintiffs and Defendant entered into a written franchise agreement(s) concerning the operation of his store(s).

81. That each of the franchise agreements executed by Defendants contained an implied covenant that Defendant would act in good faith and deal fairly with Plaintiffs in the discharge of its duties under the franchise agreements.

82. That pursuant to the franchise agreements executed by the parties, Plaintiffs justifiably expected that Defendant would provide a sustainable franchise system, would provide

ongoing support, would provide marketing efforts, and that Defendant would not undertake actions to solely to benefit Defendant at the expense of Plaintiffs or other franchisees within the system.

83. That as a direct and proximate result of the breach of Defendant of the implied covenant of good faith and fair dealing as aforesaid, Plaintiffs sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended, and for such other relief that the Court deems just and proper.

<u>COUNT 3: DONOVAN MIDDLETON & HARVESTER NUTRITION, LLC<br>NEGLIGENT MISREPRESENTATION</u>

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

84. Plaintiffs re-allege and incorporate by reference as if fully set forth herein Paragraphs 1 to 73 of Plaintiffs' Complaint.

85. Defendant owed a duty of reasonable care to Plaintiffs in providing information relating to Plaintiffs' franchise relationship with Defendant, including but not limited to, the financial viability of the franchisor, the pending sale of a controlling interest of the franchisor by founder Cory Weidel and Ryan Zink to a private equity firm, and, later. the default by the private equity firm on its loan obligations leading to the foreclosure by the lender.

86. Defendant knew or should have known that such information was material in that the franchisor had publicized and touted the experience of Cory Weidel and Ryan Zink to entice potential franchisees.

87. Defendant breached its duty of reasonable care to Plaintiffs by providing false and/or misleading information and/or omitting to disclose relevant and material information concerning the franchisor as alleged herein.

88. Plaintiffs justifiably and actually relied to their detriment upon information provided by Defendant.

89. That had Plaintiffs been aware of the pending sale of the franchisor and, later, the financial distress of the franchisor, Plaintiffs would not have entered into any franchise agreements with Defendant and would not have suffered the losses alleged herein.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended and for such other relief the Court deems just and proper.

## COUNT 4: DONOVAN MIDDLETON & HARVESTER NUTRITION, LLC FRAUDULENT MISREPRESENTATION/FRAUDULENT CONCEALMENT

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

90. Plaintiffs re-allege and incorporate by reference as if fully set forth herein, paragraphs 1 to 73 of Plaintiffs' Complaint.

91. As alleged herein, Defendant made misrepresentations that it knew or should have known to be false, and concealed material information that it had a duty to disclose to Plaintiffs.

92. In particular, Defendant fraudulently concealed from Plaintiffs information the financial viability of the franchisor, the pending sale of a controlling interest of the franchisor by founder Cory Weidel and Ryan Zink to a private equity firm, and, later. the default by the private equity firm on its loan obligations leading to the foreclosure by the lender.

93. Plaintiffs reasonably and justifiably relied upon the statements and information of Defendant, believes that Defendant was acting truthfully, honestly, and in accordance with its obligations, and otherwise in Plaintiffs' best interests. Plaintiffs relied upon such statements and information to their detriment in executing the franchise agreement discussed herein.

94. That as a direct and proximate result of the actions of Defendant as aforesaid, Plaintiffs have sustained significant financial damages.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended and for such other relief the Court deems just and proper.

## COUNT 5: DONOVAN MIDDLETON & HARVESTER NUTRITION, LLC VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

95. Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

96. The Nebraska Deceptive Trade Practices Act §87-301 through §87-303.12, is intended to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

97. That the actions of Defendant, as fully set forth above, are unconscionable actions or courses of actions and constitute violations of the Deceptive Trade Practices Act §87-302 et seq.

98. In violation of the Deceptive Trade Practices Act, Defendant's actions, without limitation: (1) used a scheme or device to defraud by means of obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises.

99. Defendant concealed, withheld from discovery and suppressed the facts giving rise to the aforesaid claim.

100. That the conduct of Defendant as aforesaid was intentional and deliberate.

101. That as a result of the aforesaid actions and courses of action of the Defendant, Plaintiffs sustained damages.

102. That Plaintiffs are entitled to all relief allowed under the law, including an award of damages, an award of attorneys' fees and costs, and preliminary and permanent injunctive relief.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended, and for such other relief that the Court deems just and proper.

## COUNT 6: EDGAR ROJAS & CRISTINA SOARES
## BREACH OF CONTRACT

COMES NOW, Plaintiffs and for their cause of action against Defendants, state as follows:

103. Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

104. That Plaintiffs and Defendant entered into a written franchise agreement(s) concerning the operation of their store(s).

105.    That pursuant to that franchise agreement(s), Defendant agreed to provide the

following, including but not limited to:

    a.  Ongoing Training;

    b.  Ongoing Support;

    c.  General Guidance;

    d.  Maintenance; and

    e.  Advertising.

106.    That Defendant has failed to meet its obligations under the franchise agreement.

107.    That as a direct and proximate result of the breach of Defendant as aforesaid,

Plaintiffs sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against

Defendant in a sum that is fair and reasonable, attorneys' fees, their costs herein

expended, and for such other relief that the Court deems just and proper.

## COUNT 7: EDGAR ROJAS & CRISTINA SOARES
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

COMES NOW, Plaintiffs and for their cause of action against Defendants, state as

follows:

108.    Plaintiffs reallege and incorporate by reference as a fully set forth herein of each

and every allegation contained in Paragraphs 1 through 73 of this Complaint.

109.    That Plaintiffs and Defendant entered into a written franchise agreement(s)

concerning the operation of his store(s).

110.     That each of the franchise agreements executed by Defendants contained an implied covenant that Defendant would act in good faith and deal fairly with Plaintiffs in the discharge of its duties under the franchise agreements.

111.     That pursuant to the franchise agreements executed by the parties, Plaintiffs justifiably expected that Defendant would provide a sustainable franchise system, would provide ongoing support, would provide marketing efforts, and that Defendant would not undertake actions to solely to benefit Defendant at the expense of Plaintiffs or other franchisees within the system.

112.     That as a direct and proximate result of the breach of Defendant of the implied covenant of good faith and fair dealing as aforesaid, Plaintiffs sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended, and for such other relief that the Court deems just and proper.

## COUNT 8: EDGAR ROJAS & CRISTINA SOARES
## NEGLIGENT MISREPRESENTATION

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

113. Plaintiffs re-allege and incorporate by reference as if fully set forth herein Paragraphs 1 to 73 of Plaintiffs' Complaint.

114. Defendant owed a duty of reasonable care to Plaintiffs in providing information relating to Plaintiffs' franchise relationship with Defendant, including but not limited to, the financial viability of the franchisor, the pending sale of a controlling interest of the franchisor by founder Cory Weidel and Ryan Zink to a private equity firm, and, later. the

default by the private equity firm on its loan obligations leading to the foreclosure by the lender.

115. Defendant knew or should have known that such information was material in that the franchisor had publicized and touted the experience of Cory Weidel and Ryan Zink to entice potential franchisees.

116. Defendant breached its duty of reasonable care to Plaintiffs by providing false and/or misleading information and/or omitting to disclose relevant and material information concerning the franchisor as alleged herein.

117. Plaintiffs justifiably and actually relied to their detriment upon information provided by Defendant.

118. That had Plaintiffs been aware of the pending sale of the franchisor and, later, the financial distress of the franchisor, Plaintiffs would not have entered into any franchise agreements with Defendant and would not have suffered the losses alleged herein.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended and for such other relief the Court deems just and proper.

## COUNT 9: EDGAR ROJAS & CRISTINA SOARES
## FRAUDULENT MISREPRESENTATION/FRAUDULENT CONCEALMENT

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

119. Plaintiffs re-allege and incorporate by reference as if fully set forth herein, paragraphs 1 to 73 of Plaintiffs' Complaint.

120.     As alleged herein, Defendant made misrepresentations that it knew or should have known to be false, and concealed material information that it had a duty to disclose to Plaintiffs.

121.      In particular, Defendant fraudulently concealed from Plaintiffs information the financial viability of the franchisor, the pending sale of a controlling interest of the franchisor by founder Cory Weidel and Ryan Zink to a private equity firm, and, later. the default by the private equity firm on its loan obligations leading to the foreclosure by the lender.

122.     Plaintiffs reasonably and justifiably relied upon the statements and information of Defendant, believes that Defendant was acting truthfully, honestly, and in accordance with its obligations, and otherwise in Plaintiffs' best interests.  Plaintiffs relied upon such statements and information to their detriment in executing the franchise agreement discussed herein.

123.     That as a direct and proximate result of the actions of Defendant as aforesaid, Plaintiffs have sustained significant financial damages.

        WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended and for such other relief the Court deems just and proper.

<u>COUNT 10: EDGAR ROJAS & CRISTINA SOARES</u>
<u>VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT</u>

        Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

124.     Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

125.     The Nebraska Deceptive Trade Practices Act §87-301 through §87-303.12, is intended to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

126.     That the actions of Defendant, as fully set forth above, are unconscionable actions or courses of actions and constitute violations of the Deceptive Trade Practices Act §87-302 et seq.

127.     In violation of the Deceptive Trade Practices Act, Defendant's actions, without limitation: (1) used a scheme or device to defraud by means of obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises.

128.     Defendant concealed, withheld from discovery and suppressed the facts giving rise to the aforesaid claim.

129.     That the conduct of Defendant as aforesaid was intentional and deliberate.

130.     That as a result of the aforesaid actions and courses of action of the Defendant, Plaintiffs sustained damages.

131.     That Plaintiffs are entitled to all relief allowed under the law, including an award of damages, an award of attorneys' fees and costs, and preliminary and permanent injunctive relief.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant, in a sum that is fair and reasonable, attorneys' fees, their costs herein expended, and for such other relief that the Court deems just and proper.

<u>COUNT 11: EDGAR ROJAS & CRISTINA SOARES</u>
<u>VIOLATION OF FLORIDA FRANCHISE ACT</u>

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

132.    Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

133.    That Defendant is a franchisor, within the meaning of Florida Statute §817.416.

134.    In selling and establishing the franchise to Plaintiffs, Defendant violated Florida Statute §817.416(2)(a) known as the Florida Franchise Act.

135.    Defendant intentionally misrepresented to Plaintiffs the prospects or chances for success regarding the proposed franchise and intentionally misrepresented to Plaintiffs by failure to disclose or otherwise the known required total investment for the proposed franchise.

136.    Defendant provided Plaintiffs with representations regarding revenues and the Florida market, including the overstating and misrepresenting the prospects for success in their market and underestimated and understated the costs necessary to establish market presence in their market.

137.    That as a direct and proximate result of the misrepresentations of Defendant as aforesaid, Plaintiffs sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, attorneys' fee, their costs herein expended, and for such other relief that the Court deems just and proper.

COUNT 12: HERMAN HOURIE & NUTRITION CASTLE, LLC & BRIGHT FUTURE
HOLDINGS, LLC & VIVIFY, INC.
BREACH OF CONTRACT

COMES NOW, Plaintiffs and for their cause of action against Defendants, state as follows:

138.　　Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

139.　　That Plaintiffs and Defendant entered into a written franchise agreement(s) concerning the operation of their store(s).

140.　　That pursuant to that franchise agreement(s), Defendant agreed to provide the following, including but not limited to:

　　a.　Ongoing Training;

　　b.　Ongoing Support;

　　c.　General Guidance;

　　d.　Maintenance; and

　　e.　Advertising.

141.　　That Defendant has failed to meet its obligations under the franchise agreement.

142.　　That as a direct and proximate result of the breach of Defendant as aforesaid, Plaintiffs sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended, and for such other relief that the Court deems just and proper.

COUNT 13: HERMAN HOURIE & NUTRITION CASTLE, LLC & BRIGHT FUTURE
HOLDINGS, LLC & VIVIFY, INC.
BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

COMES NOW, Plaintiffs and for their cause of action against Defendants, state as
follows:

143.      Plaintiffs reallege and incorporate by reference as a fully set forth herein of each
and every allegation contained in Paragraphs 1 through 73 of this Complaint.

144.      That Plaintiffs and Defendant entered into a written franchise agreement(s)
concerning the operation of his store(s).

145.      That each of the franchise agreements executed by Defendants contained an
implied covenant that Defendant would act in good faith and deal fairly with Plaintiffs in
the discharge of its duties under the franchise agreements.

146.      That pursuant to the franchise agreements executed by the parties, Plaintiffs
justifiably expected that Defendant would provide a sustainable franchise system, would
provide ongoing support, would provide marketing efforts, and that Defendant would not
undertake actions to solely to benefit Defendant at the expense of Plaintiffs or other
franchisees within the system.

147.      That as a direct and proximate result of the breach of Defendant of the implied
covenant of good faith and fair dealing as aforesaid, Plaintiffs sustained damage.

          WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against
Defendant in a sum that is fair and reasonable, their costs herein expended, and for such
other relief that the Court deems just and proper.

<u>COUNT 14: HERMAN HOURIE & NUTRITION CASTLE, LLC & BRIGHT FUTURE
HOLDINGS, LLC & VIVIFY, INC.
NEGLIGENT MISREPRESENTATION</u>

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

148. Plaintiffs re-allege and incorporate by reference as if fully set forth herein Paragraphs 1 to 73 of Plaintiffs' Complaint.

149. Defendant owed a duty of reasonable care to Plaintiffs in providing information relating to Plaintiffs' franchise relationship with Defendant, including but not limited to, the financial viability of the franchisor, the pending sale of a controlling interest of the franchisor by founder Cory Weidel and Ryan Zink to a private equity firm, and, later. the default by the private equity firm on its loan obligations leading to the foreclosure by the lender.

150. Defendant knew or should have known that such information was material in that the franchisor had publicized and touted the experience of Cory Weidel and Ryan Zink to entice potential franchisees.

151. Defendant breached its duty of reasonable care to Plaintiffs by providing false and/or misleading information and/or omitting to disclose relevant and material information concerning the franchisor as alleged herein.

152. Plaintiffs justifiably and actually relied to their detriment upon information provided by Defendant.

153. That had Plaintiffs been aware of the pending sale of the franchisor and, later, the financial distress of the franchisor, Plaintiffs would not have entered into any franchise agreements with Defendant and would not have suffered the losses alleged herein.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended and for such other relief the Court deems just and proper.

### COUNT 15: HERMAN HOURIE & NUTRITION CASTLE, LLC & BRIGHT FUTURE HOLDINGS, LLC & VIVIFY, INC.
### FRAUDULENT MISREPRESENTATION/FRAUDULENT CONCEALMENT

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

154.	Plaintiffs re-allege and incorporate by reference as if fully set forth herein, paragraphs 1 to 73 of Plaintiffs' Complaint.

155.	As alleged herein, Defendant made misrepresentations that it knew or should have known to be false, and concealed material information that it had a duty to disclose to Plaintiffs.

156.	 In particular, Defendant fraudulently concealed from Plaintiffs information the financial viability of the franchisor, the pending sale of a controlling interest of the franchisor by founder Cory Weidel and Ryan Zink to a private equity firm, and, later. the default by the private equity firm on its loan obligations leading to the foreclosure by the lender.

157.	Plaintiffs reasonably and justifiably relied upon the statements and information of Defendant, believes that Defendant was acting truthfully, honestly, and in accordance with its obligations, and otherwise in Plaintiffs' best interests.  Plaintiffs relied upon such statements and information to their detriment in executing the franchise agreement discussed herein.

158.    That as a direct and proximate result of the actions of Defendant as aforesaid, Plaintiffs have sustained significant financial damages.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended and for such other relief the Court deems just and proper.

COUNT 16: HERMAN HOURIE & NUTRITION CASTLE, LLC & BRIGHT FUTURE HOLDINGS, LLC & VIVIFY, INC.
VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

159.    Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

160.    The Nebraska Deceptive Trade Practices Act §87-301 through §87-303.12, is intended to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

161.    That the actions of Defendant, as fully set forth above, are unconscionable actions or courses of actions and constitute violations of the Deceptive Trade Practices Act §87-302 et seq.

162.    In violation of the Deceptive Trade Practices Act, Defendant's actions, without limitation: (1) used a scheme or device to defraud by means of obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises.

163.     Defendant concealed, withheld from discovery and suppressed the facts giving rise to the aforesaid claim.

164.     That the conduct of Defendant as aforesaid was intentional and deliberate.

165.     That as a result of the aforesaid actions and courses of action of the Defendant, Plaintiffs sustained damages.

166.     That Plaintiffs are entitled to all relief allowed under the law, including an award of damages, an award of attorneys' fees and costs, and preliminary and permanent injunctive relief.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, attorneys' fees, their costs herein expended, and for such other relief that the Court deems just and proper.

COUNT 17: HERMAN HOURIE & NUTRITION CASTLE, LLC & BRIGHT FUTURE
HOLDINGS, LLC & VIVIFY, INC.
VIOLATION OF FLORIDA FRANCHISE ACT

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

167.     Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

168.     That Defendant is a franchisor, within the meaning of Florida Statute §817.416.

169.     In selling and establishing the franchise to Plaintiffs, Defendant violated Florida Statute §817.416(2)(a) known as the Florida Franchise Act.

170.     Defendant intentionally misrepresented to Plaintiffs the prospects or chances for success regarding the proposed franchise and intentionally misrepresented to Plaintiffs by

failure to disclose or otherwise the known required total investment for the proposed franchise.

171.     Defendant provided Plaintiffs with representations regarding revenues and the Florida market, including the overstating and misrepresenting the prospects for success in their market and underestimated and understated the costs necessary to establish market presence in their market.

172.     That as a direct and proximate result of the misrepresentations of Defendant as aforesaid, Plaintiffs sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, attorneys' fee, their costs herein expended, and for such other relief that the Court deems just and proper.

## COUNT 18: KATHERINA JERAK
## BREACH OF CONTRACT

COMES NOW, Plaintiffs and for their cause of action against Defendants, state as follows:

173.     Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

174.     That Plaintiffs and Defendant entered into a written franchise agreement(s) concerning the operation of their store(s).

175.     That pursuant to that franchise agreement(s), Defendant agreed to provide the following, including but not limited to:

   a.  Ongoing Training;

   b.  Ongoing Support;

    c.   General Guidance;

    d.   Maintenance; and

    e.   Advertising.

176.     That Defendant has failed to meet its obligations under the franchise agreement.

177.     That as a direct and proximate result of the breach of Defendant as aforesaid, Plaintiffs sustained damage.

       WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended, and for such other relief that the Court deems just and proper.

COUNT 19: KATHERINA JERAK
BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

COMES NOW, Plaintiffs and for their cause of action against Defendants, state as follows:

178.     Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

179.     That Plaintiffs and Defendant entered into a written franchise agreement(s) concerning the operation of his store(s).

180.     That each of the franchise agreements executed by Defendants contained an implied covenant that Defendant would act in good faith and deal fairly with Plaintiffs in the discharge of its duties under the franchise agreements.

181.     That pursuant to the franchise agreements executed by the parties, Plaintiffs justifiably expected that Defendant would provide a sustainable franchise system, would provide ongoing support, would provide marketing efforts, and that Defendant would not

undertake actions to solely to benefit Defendant at the expense of Plaintiffs or other franchisees within the system.

182.     That as a direct and proximate result of the breach of Defendant of the implied covenant of good faith and fair dealing as aforesaid, Plaintiffs sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended, and for such other relief that the Court deems just and proper.

<u>COUNT 20: KATHERINA JERAK</u>
<u>NEGLIGENT MISREPRESENTATION</u>

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

183. Plaintiffs re-allege and incorporate by reference as if fully set forth herein Paragraphs 1 to 73 of Plaintiffs' Complaint.

184. Defendant owed a duty of reasonable care to Plaintiffs in providing information relating to Plaintiffs' franchise relationship with Defendant, including but not limited to, the financial viability of the franchisor, the pending sale of a controlling interest of the franchisor by founder Cory Weidel and Ryan Zink to a private equity firm, and, later. the default by the private equity firm on its loan obligations leading to the foreclosure by the lender.

185. Defendant knew or should have known that such information was material in that the franchisor had publicized and touted the experience of Cory Weidel and Ryan Zink to entice potential franchisees.

186. Defendant breached its duty of reasonable care to Plaintiffs by providing false and/or misleading information and/or omitting to disclose relevant and material information concerning the franchisor as alleged herein.

187. Plaintiffs justifiably and actually relied to their detriment upon information provided by Defendant.

188. That had Plaintiffs been aware of the pending sale of the franchisor and, later, the financial distress of the franchisor, Plaintiffs would not have entered into any franchise agreements with Defendant and would not have suffered the losses alleged herein.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended and for such other relief the Court deems just and proper.

## COUNT 21: KATHERINA JERAK
## FRAUDULENT MISREPRESENTATION/FRAUDULENT CONCEALMENT

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

189. Plaintiffs re-allege and incorporate by reference as if fully set forth herein, paragraphs 1 to 73 of Plaintiffs' Complaint.

190. As alleged herein, Defendant made misrepresentations that it knew or should have known to be false, and concealed material information that it had a duty to disclose to Plaintiffs.

191. In particular, Defendant fraudulently concealed from Plaintiffs information the financial viability of the franchisor, the pending sale of a controlling interest of the franchisor by founder Cory Weidel and Ryan Zink to a private equity firm, and, later. the

default by the private equity firm on its loan obligations leading to the foreclosure by the lender.

192. Plaintiffs reasonably and justifiably relied upon the statements and information of Defendant, believes that Defendant was acting truthfully, honestly, and in accordance with its obligations, and otherwise in Plaintiffs' best interests. Plaintiffs relied upon such statements and information to their detriment in executing the franchise agreement discussed herein.

193. That as a direct and proximate result of the actions of Defendant as aforesaid, Plaintiffs have sustained significant financial damages.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended and for such other relief the Court deems just and proper.

## COUNT 22: KATHERINA JERAK
## VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

194. Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

195. The Nebraska Deceptive Trade Practices Act §87-301 through §87-303.12, is intended to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

196.    That the actions of Defendant, as fully set forth above, are unconscionable actions or courses of actions and constitute violations of the Deceptive Trade Practices Act §87-302 et seq.

197.    In violation of the Deceptive Trade Practices Act, Defendant's actions, without limitation: (1) used a scheme or device to defraud by means of obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises.

198.    Defendant concealed, withheld from discovery and suppressed the facts giving rise to the aforesaid claim.

199.    That the conduct of Defendant as aforesaid was intentional and deliberate.

200.    That as a result of the aforesaid actions and courses of action of the Defendant, Plaintiffs sustained damages.

201.    That Plaintiffs are entitled to all relief allowed under the law, including an award of damages, an award of attorneys' fees and costs, and preliminary and permanent injunctive relief.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, attorneys' fees, their costs herein expended, and for such other relief that the Court deems just and proper.

## COUNT 23: KATHERINA JERAK
## VIOLATION OF FLORIDA FRANCHISE ACT

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

202.    Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

203.     That Defendant is a franchisor, within the meaning of Florida Statute §817.416.

204.     In selling and establishing the franchise to Plaintiffs, Defendant violated Florida Statute §817.416(2)(a) known as the Florida Franchise Act.

205.     Defendant intentionally misrepresented to Plaintiffs the prospects or chances for success regarding the proposed franchise and intentionally misrepresented to Plaintiffs by failure to disclose or otherwise the known required total investment for the proposed franchise.

206.     Defendant provided Plaintiffs with representations regarding revenues and the Florida market, including the overstating and misrepresenting the prospects for success in their market and underestimated and understated the costs necessary to establish market presence in their market.

207.     That as a direct and proximate result of the misrepresentations of Defendant as aforesaid, Plaintiffs sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, attorneys' fee, their costs herein expended, and for such other relief that the Court deems just and proper.

<u>COUNT 24: M.G. NUTRITION, LLC</u>
<u>BREACH OF CONTRACT</u>

COMES NOW, Plaintiffs and for their cause of action against Defendants, state as follows:

208.     Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

209.     That Plaintiffs and Defendant entered into a written franchise agreement(s) concerning the operation of their store(s).

210.     That pursuant to that franchise agreement(s), Defendant agreed to provide the following, including but not limited to:

   a.  Ongoing Training;

   b.  Ongoing Support;

   c.  General Guidance;

   d.  Maintenance; and

   e.  Advertising.

211.     That Defendant has failed to meet its obligations under the franchise agreement.

212.     That as a direct and proximate result of the breach of Defendant as aforesaid, Plaintiffs sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended, and for such other relief that the Court deems just and proper.

## COUNT 25: M.G. NUTRITION, LLC
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

COMES NOW, Plaintiffs and for their cause of action against Defendants, state as follows:

213.     Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

214.     That Plaintiffs and Defendant entered into a written franchise agreement(s) concerning the operation of his store(s).

215.     That each of the franchise agreements executed by Defendants contained an implied covenant that Defendant would act in good faith and deal fairly with Plaintiffs in the discharge of its duties under the franchise agreements.

216.     That pursuant to the franchise agreements executed by the parties, Plaintiffs justifiably expected that Defendant would provide a sustainable franchise system, would provide ongoing support, would provide marketing efforts, and that Defendant would not undertake actions to solely to benefit Defendant at the expense of Plaintiffs or other franchisees within the system.

217.     That as a direct and proximate result of the breach of Defendant of the implied covenant of good faith and fair dealing as aforesaid, Plaintiffs sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended, and for such other relief that the Court deems just and proper.

## COUNT 26: M.G. NUTRITION, LLC
### NEGLIGENT MISREPRESENTATION

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

218. Plaintiffs re-allege and incorporate by reference as if fully set forth herein Paragraphs 1 to 73 of Plaintiffs' Complaint.

219. Defendant owed a duty of reasonable care to Plaintiffs in providing information relating to Plaintiffs' franchise relationship with Defendant, including but not limited to, the financial viability of the franchisor, the pending sale of a controlling interest of the franchisor by founder Cory Weidel and Ryan Zink to a private equity firm, and, later. the

default by the private equity firm on its loan obligations leading to the foreclosure by the lender.

220. Defendant knew or should have known that such information was material in that the franchisor had publicized and touted the experience of Cory Weidel and Ryan Zink to entice potential franchisees.

221. Defendant breached its duty of reasonable care to Plaintiffs by providing false and/or misleading information and/or omitting to disclose relevant and material information concerning the franchisor as alleged herein.

222. Plaintiffs justifiably and actually relied to their detriment upon information provided by Defendant.

223. That had Plaintiffs been aware of the pending sale of the franchisor and, later, the financial distress of the franchisor, Plaintiffs would not have entered into any franchise agreements with Defendant and would not have suffered the losses alleged herein.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended and for such other relief the Court deems just and proper.

<u>COUNT 27: M.G. NUTRITION, LLC</u>
<u>FRAUDULENT MISREPRESENTATION/FRAUDULENT CONCEALMENT</u>

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

224. Plaintiffs re-allege and incorporate by reference as if fully set forth herein, paragraphs 1 to 73 of Plaintiffs' Complaint.

225.     As alleged herein, Defendant made misrepresentations that it knew or should have known to be false, and concealed material information that it had a duty to disclose to Plaintiffs.

226.      In particular, Defendant fraudulently concealed from Plaintiffs information the financial viability of the franchisor, the pending sale of a controlling interest of the franchisor by founder Cory Weidel and Ryan Zink to a private equity firm, and, later. the default by the private equity firm on its loan obligations leading to the foreclosure by the lender.

227.     Plaintiffs reasonably and justifiably relied upon the statements and information of Defendant, believes that Defendant was acting truthfully, honestly, and in accordance with its obligations, and otherwise in Plaintiffs' best interests.  Plaintiffs relied upon such statements and information to their detriment in executing the franchise agreement discussed herein.

228.     That as a direct and proximate result of the actions of Defendant as aforesaid, Plaintiffs have sustained significant financial damages.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended and for such other relief the Court deems just and proper.

<u>COUNT 28: M.G. NUTRITION, LLC</u>
<u>VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT</u>

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

229.     Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

230.     The Nebraska Deceptive Trade Practices Act §87-301 through §87-303.12, is intended to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

231.     That the actions of Defendant, as fully set forth above, are unconscionable actions or courses of actions and constitute violations of the Deceptive Trade Practices Act §87-302 et seq.

232.     In violation of the Deceptive Trade Practices Act, Defendant's actions, without limitation: (1) used a scheme or device to defraud by means of obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises.

233.     Defendant concealed, withheld from discovery and suppressed the facts giving rise to the aforesaid claim.

234.     That the conduct of Defendant as aforesaid was intentional and deliberate.

235.     That as a result of the aforesaid actions and courses of action of the Defendant, Plaintiffs sustained damages.

236.     That Plaintiffs are entitled to all relief allowed under the law, including an award

of damages, an award of attorneys' fees and costs, and preliminary and permanent

injunctive relief.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant

in a sum that is fair and reasonable, attorneys' fees, their costs herein expended, and for

such other relief that the Court deems just and proper.

<u>COUNT 29: WARRIOR FITNESS & NUTRITION, INC.</u>
<u>BREACH OF CONTRACT</u>

COMES NOW, Plaintiffs and for their cause of action against Defendants, state as

follows:

237.     Plaintiffs reallege and incorporate by reference as a fully set forth herein of each

and every allegation contained in Paragraphs 1 through 73 of this Complaint.

238.     That Plaintiffs and Defendant entered into a written franchise agreement(s)

concerning the operation of their store(s).

239.     That pursuant to that franchise agreement(s), Defendant agreed to provide the

following, including but not limited to:

   a.  Ongoing Training;

   b.  Ongoing Support;

   c.  General Guidance;

   d.  Maintenance; and

   e.  Advertising.

240.     That Defendant has failed to meet its obligations under the franchise agreement.

241.     That as a direct and proximate result of the breach of Defendant as aforesaid, Plaintiffs sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended, and for such other relief that the Court deems just and proper.

<u>COUNT 30: WARRIOR FITNESS & NUTRITION, INC.</u>
<u>BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING</u>

COMES NOW, Plaintiffs and for their cause of action against Defendants, state as follows:

242.     Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

243.     That Plaintiffs and Defendant entered into a written franchise agreement(s) concerning the operation of his store(s).

244.     That each of the franchise agreements executed by Defendants contained an implied covenant that Defendant would act in good faith and deal fairly with Plaintiffs in the discharge of its duties under the franchise agreements.

245.     That pursuant to the franchise agreements executed by the parties, Plaintiffs justifiably expected that Defendant would provide a sustainable franchise system, would provide ongoing support, would provide marketing efforts, and that Defendant would not undertake actions to solely to benefit Defendant at the expense of Plaintiffs or other franchisees within the system.

246.     That as a direct and proximate result of the breach of Defendant of the implied covenant of good faith and fair dealing as aforesaid, Plaintiffs sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended, and for such other relief that the Court deems just and proper.

COUNT 31: WARRIOR FITNESS & NUTRITION, INC.<br>NEGLIGENT MISREPRESENTATION

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

247. Plaintiffs re-allege and incorporate by reference as if fully set forth herein Paragraphs 1 to 73 of Plaintiffs' Complaint.

248. Defendant owed a duty of reasonable care to Plaintiffs in providing information relating to Plaintiffs' franchise relationship with Defendant, including but not limited to, the financial viability of the franchisor, the pending sale of a controlling interest of the franchisor by founder Cory Weidel and Ryan Zink to a private equity firm, and, later. the default by the private equity firm on its loan obligations leading to the foreclosure by the lender.

249. Defendant knew or should have known that such information was material in that the franchisor had publicized and touted the experience of Cory Weidel and Ryan Zink to entice potential franchisees.

250. Defendant breached its duty of reasonable care to Plaintiffs by providing false and/or misleading information and/or omitting to disclose relevant and material information concerning the franchisor as alleged herein.

251. Plaintiffs justifiably and actually relied to their detriment upon information provided by Defendant.

252. That had Plaintiffs been aware of the pending sale of the franchisor and, later, the financial distress of the franchisor, Plaintiffs would not have entered into any franchise agreements with Defendant and would not have suffered the losses alleged herein.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended and for such other relief the Court deems just and proper.


COUNT 32: WARRIOR FITNESS & NUTRITION, INC.
FRAUDULENT MISREPRESENTATION/FRAUDULENT CONCEALMENT

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

253. Plaintiffs re-allege and incorporate by reference as if fully set forth herein, paragraphs 1 to 73 of Plaintiffs' Complaint.

254. As alleged herein, Defendant made misrepresentations that it knew or should have known to be false, and concealed material information that it had a duty to disclose to Plaintiffs.

255. In particular, Defendant fraudulently concealed from Plaintiffs information the financial viability of the franchisor, the pending sale of a controlling interest of the franchisor by founder Cory Weidel and Ryan Zink to a private equity firm, and, later. the default by the private equity firm on its loan obligations leading to the foreclosure by the lender.

256. Plaintiffs reasonably and justifiably relied upon the statements and information of Defendant, believes that Defendant was acting truthfully, honestly, and in accordance with its obligations, and otherwise in Plaintiffs' best interests.  Plaintiffs relied upon such

statements and information to their detriment in executing the franchise agreement discussed herein.

257.     That as a direct and proximate result of the actions of Defendant as aforesaid, Plaintiffs have sustained significant financial damages.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, their costs herein expended and for such other relief the Court deems just and proper.

<u>COUNT 33: WARRIOR FITNESS & NUTRITION, INC.</u>
<u>VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT</u>

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

258.     Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

259.     The Nebraska Deceptive Trade Practices Act §87-301 through §87-303.12, is intended to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

260.     That the actions of Defendant, as fully set forth above, are unconscionable actions or courses of actions and constitute violations of the Deceptive Trade Practices Act §87-302 et seq.

261.     In violation of the Deceptive Trade Practices Act, Defendant's actions, without limitation: (1) used a scheme or device to defraud by means of obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises.

262.     Defendant concealed, withheld from discovery and suppressed the facts giving rise to the aforesaid claim.

263.     That the conduct of Defendant as aforesaid was intentional and deliberate.

264.     That as a result of the aforesaid actions and courses of action of the Defendant, Plaintiffs sustained damages.

265.     That Plaintiffs are entitled to all relief allowed under the law, including an award of damages, an award of attorneys' fees and costs, and preliminary and permanent injunctive relief.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendant in a sum that is fair and reasonable, attorneys' fees, their costs herein expended, and for such other relief that the Court deems just and proper.

## COUNT 34: WARRIOR FITNESS & NUTRITION, INC.
## VIOLATION OF THE INDIANA DECEPTIVE FRANCHISE PRACTICES ACT

Come now, Plaintiffs and for their cause of action against Defendant, state as follows:

266.     Plaintiffs reallege and incorporate by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 73 of this Complaint.

267.     Under the Indiana Deceptive Franchise Practices Act it is unlawful for any franchise agreement to contain any of the following provisions:

   a.  Allowing the franchisor to obtain money, goods, services, or any other benefit from any other person with whom the franchisee does business, on account of, or in relation to, the transaction between the franchisee and the other person, other than for compensation for services rendered by the franchisor, unless the benefit

is promptly accounted for, and transmitted to the franchisee.  IND. CODE § 23-2-2.7-1(4).

268.    Under the Indiana Deceptive Franchise Practices Act it is unlawful for any franchisor to:

a.  Coerce the franchisee to order or accept delivery of any goods, supplies, inventories, or services which are neither necessary to the operation of the franchise, required by the franchise agreement, required by law, nor voluntarily ordered by the franchisee; IND. CODE § 23-2-2.7-2(1)(i).

b.  Coerce the franchisee to participate in an advertising campaign or contest, any promotional campaign, promotional materials, display decorations, or materials at an expense to the franchisee over and above the maximum percentage of gross monthly sales or the maximum absolute sum required to be spent by the franchisee provided for in the franchise agreement; IND. CODE § 23-2-2.7-2(1)(iii).

c.  Obtaining money, goods, services, or any other benefit from any other person with whom the franchisee does business, on account of, or in relation to, the transaction between the franchisee and the other person, other than compensation for services rendered by the franchisor, unless the benefit is promptly accounted for, and transmitted to the franchisee; IND. CODE § 23-2-2.7-2(6)

d.  Using deceptive advertising or engaging in deceptive acts in connection with the franchise or the franchisor's business. IND. CODE § 23-2-2.7-2(8)

269.    That the actions of Defendant, as fully set forth above, constitute violations of the Indiana Deceptive Franchise Practices Act.

270.     That as a result of the aforesaid actions and courses of action of the Defendant,

Plaintiffs sustained damages.

WHEREFORE, for the foregoing reasons, Plaintiffs pray judgment against Defendantin a

sum that is fair and reasonable, attorneys' fees, their costs herein expended, and for such other

relief that the Court deems just and proper.

## **Demand for Jury Trial**

Plaintiffs hereby demand trial by jury on all claims so triable.

DATED this 9th day of March, 2018

/s/  Jonathan E. Fortman_____
Jonathan E. Fortman
Law Office of Jonathan E. Forman, LLC
250 Saint Catherine Street
Florissant, MO 63031
Telephone: (314) 522-2312
Email: jef@fortmanlaw.com

*Attorney for Plaintiffs*