UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA
OMAHA DIVISION

| | |
|---|---|
| DONOVAN MIDDLETON and HARVESTER NUTRITION, LLC, <br><br>     Plaintiffs, <br><br> -vs- <br><br><br> COMPLETE NUTRITION FRANCHISING, LLC, <br><br> And <br><br> COMPLETE NUTRITION FRANCHISE HOLDINGS, LLC <br> (Serve: Principal Office <br>     17220 Wright Street <br>     Suite 200 <br>     Omaha, NE  68130) <br><br> And <br><br> CR HOLDINGS, LLC, <br> (Serve: Registered Agent Solutions, Inc. <br>     5601 South 59th Street <br>     Suite C <br>     Lincoln, NE  68516) <br><br> And <br><br> DOMINUS HEALTH INTERMEDIATE HOLDCO, LLC <br> (Serve: The Corporation Trust Company <br>     Corporation Trust Center <br>     1209 Orange Street <br>     Wilmington, DE  19801) <br><br> And <br><br> DOMINUS HEALTH HOLDINGS, LLC <br> (Serve: The Corporation Trust Company <br>     Corporation Trust Center <br>     1209 Orange Street | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     Case Number: 8:18-CV-115 |

Wilmington, DE  19801)                    )
                                          )
Defendant.                                )

## AMENDED COMPLAINT

Come now Plaintiffs and for their causes of action against Defendants state as follows:

## PARTIES

1. Plaintiff Donovan Middleton is a citizen and resident of the State of Nevada.  Plaintiff Donovan Middleton executed a franchise agreement with Defendant on December 18th, 2015 for a Complete Nutrition franchise located at 7445 S. Durango Drive, Suite 101, Las Vegas, NV  89113.  Plaintiff Donovan Middleton assigned the franchise agreement to Plaintiff, Harvester Nutrition, LLC, a Nevada Limited Liability Company on June 15th, 2016.

2. Plaintiff Harvester Nutrition, LLC is a Nevada limited liability company.  Plaintiff Harvester Nutrition, LLC executed an Agreement of Understanding Granting Multiple Franchises with Defendant on February 10th, 2017.

3. Plaintiff Harvester Nutrition, LLC executed a franchise agreement with Defendant on June 28th, 2017 for a Complete Nutrition franchise located at 2502 Highway 6 & 50, Suite 400, Grand Junction, CO  81505.

4. Plaintiff Harvester Nutrition, LLC executed a franchise agreement with Defendant on June 28th, 2017 for a Complete Nutrition franchise located at 19 South Stephanie Street, Suite 180, Henderson, NV  89012.

5. Defendant Complete Nutrition Franchising, LLC is a Nebraska limited liability company organized on August 7th, 2009 with its principal place of business in Omaha, Nebraska doing business under the names "Complete Nutrition," "Complete Nutrition Franchising,

LLC' and "Complete Nutrition – Look Better. Feel Better. Perform Better."

6. Defendant Complete Nutrition Franchise Holdings, LLC f/k/a Complete Nutrition Franchise Holdings, Inc. was incorporated in Nebraska on December 15th, 2011 and converted to a limited liability company under Nebraska law on December 16th, 2015 with its principal place of business located in Omaha, Nebraska.

7. Defendant CR Holdings, LLC, f/k/a CR Holdings, Inc., f/k/a Complete Nutrition Holdings, Inc., f/k/a Complete Nutrition, Inc. was originally incorporated as a South Dakota corporation on March 5th, 2005.  It was reincorporated as a Nebraska corporation on July 17th, 2007.  On August 7th, 2009, Complete Nutrition, Inc. changed its corporate name to Complete Nutrition Holdings, Inc. and on January 5th, 2012 changed its corporate name to CR Holdings, Inc.  On December 16th, 2015, CR Holdings, Inc was converted to a limited liability company under Nebraska law.  The principal place of business for CR Holdings, LLC is in Omaha, Nebraska.

8. Defendant Dominus Health Intermediate Holdco, LLC is a Delaware limited liability company organized on December 3rd, 2015 with its principal place of business in Omaha, Nebraska.

9. Defendant Dominus Health Holdings, LLC is a Delaware limited liability company organized on December 3rd, 2015 with its principal place of business in Omaha, Nebraska.

## **JURISDICTION**

10. This Court has subject matter jurisdiction over Plaintiffs' claims against Defendant pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00.

11. Jurisdiction in this court is proper as the parties consented to the jurisdiction of this Court under the terms of the franchise agreements existing between the parties.

**Introduction**

12. Complete Nutrition was founded in 2004 by Cory Weidel who had been a franchisee of fifteen(15) GNC Nutrition stores and Ryan Zink who had been a manager of Mr. Weidel's GNC Nutrition franchise located in Omaha, Nebraska.  Together Mr. Weidel and Mr. Zink formed NDS Nutrition which sold exclusive nutritional supplements to other GNC franchisees.

13. Complete Nutrition, Inc. was incorporated as a South Dakota corporation on March 5th, 2005 (hereinafter referred to as "Complete Nutrition, Inc. – SD").

14. On July 17th, 2007 "Complete Nutrition, Inc.- SD" was reincorporated as a Nebraska corporation (hereinafter referred to as "Complete Nutrition, Inc. – NE").

15. "Complete Nutrition, Inc. – NE" was the franchisor of Complete Nutrition stores from 2007 through August of 2009.

16. In August of 2009, "Complete Nutrition, Inc. – NE" changed its name to Complete Nutrition Holdings, Inc.

17. In August of 2009, Defendant Complete Nutrition Franchising, LLC was incorporated in the State of Nebraska with its principal place of business in Omaha, Nebraska and formed as a wholly-owned subsidiary of Complete Nutrition Holdings, Inc.

18. In August of 2009, Complete Nutrition Corporate Stores, LLC was formed in Nebraska and owns and operates Complete Nutrition stores.

19. In August of 2009, R2 Distribution, LLC (f/k/a Complete Nutrition Wholesale, LLC) was formed in Nebraska and distributes many of the products the franchisees must carry in

their stores.

20. In December of 2011, Complete Nutrition Franchise Holdings, Inc. was incorporated in the State of Nebraska and became the parent company of Defendant in January of 2012. Complete Nutrition Franchise Holdings, Inc. converted to a limited liability company under Nebraska law in December of 2015 to Complete Nutrition Franchise Holdings, LLC.

21. In January of 2012, Complete Nutrition Holdings, Inc. changed its name to CR Holdings, Inc. which was converted to a limited liability company under Nebraska law in December of 2015 to CR Holdings, LLC.

22. Defendant CR Holdings, LLC is the parent company of Complete Nutrition Corporate Stores, LLC and R2 Distribution, LLC and the former parent of the Defendant Complete Nutrition Franchise, LLC.  In addition, Defendant CR Holdings, LLC while transacting business as Complete Nutrition Holdings, Inc. guaranteed the performance of the duties and obligations of Defendant Complete Nutrition Franchising, LLC under its franchise agreements. (EXHIBIT 1)

23. Complete Nutrition Franchise Holdings, LLC is now the parent company of Defendant.

24. On December 16th 2015, Defendant Dominus Health Intermediate Holdco, LLC ("DHIH") became the parent company of Defendant Complete Nutrition Franchise Holdings, LLC and Defendant CR Holdings, LLC.

25. DHIH is wholly owned by Dominus Health Holdings, LLC ("DHH").

26. On December 16th, 2015, Defendant Dominus Health Holdings, LLC invested in the Complete Nutrition System.  As a result of the transaction, Defendant Complete Nutrition Franchising Holdings, LLC and Defendant CR Holdings, LLC are now wholly owned by

Defendant Dominus Health Holdings, LLC.

27. Upon information and belief, that at the time Defendant Dominus Health Holdings, LLC acquired controlling interest, it, by and through its parent companies, obtained $25.1 million dollars in financing from Monroe Capital, LLC in order to acquire Defendant CR Holdings, LLC and Defendant Complete Nutrition Franchise Holdings, LLC.

28. That sometime in 2017, Defendant Dominus Health Holdings, LLC and/or its parent companies defaulted on its loan from Monroe Capital, LLC at which time, Monroe required DHH to retain the services of an outside management company.  Thereafter, with DHH unable to correct the default, DHH and Monroe Capital, LLC entered into an agreement whereby Monroe would foreclose on the assets and conduct a sale under the Uniform Commercial Code thereby rendering Defendants without adequate assets to continue operating. The franchise agreements existing between Defendants and Plaintiffs were excluded from that sale. (EXHIBIT 2)

29. Defendant Complete Nutrition Franchising, LLC is a franchisor of retail stores offering nutritional supplements, health and beauty products and other related items to the general public using the "Complete Nutrition" trade name, trademark and system of operating procedures.

30. Defendant Complete Nutrition Franchising, LLC sold Complete Nutrition franchises throughout the United States.  To date, Defendant Complete Nutrition Franchising, LLC has in excess of fifty (50) franchises, seventeen (17) of which are owned by the Plaintiffs.

31. All Plaintiffs are and/or were franchisees of Defendant Complete Nutrition Franchising, LLC.

## ALLEGATIONS COMMON TO ALL COUNTS

32. Complete Nutrition was formed in August of 2009 and began awarding Complete Nutrition franchises.

33. In order to sell franchises, Complete Nutrition had/has to comply with Federal and State franchising rules.   Principal among these is the Federal Trade Commission franchise disclosure trade regulation rule, the "FTC Rule."

I.   FTC Rule

34. The Commission promulgated the original Franchise Rule on December 21, 1978.  Based upon the original rulemaking record, the Commission found widespread deception in the sale of franchises and business opportunities through both material misrepresentations and nondisclosures of material facts.  Specifically, the Commission found that franchisors and business opportunity sellers often made material misrepresentations about: the nature of the seller and its business operations, the costs to purchase a franchise or business opportunity and other contractual terms and conditions under which the business would operate, the success of the seller and its purchasers, and the seller's financial viability. The Commission also found other unfair or deceptive practices pervasive: franchisors' and business opportunity sellers' use of false or unsubstantiated earnings claims to lure prospective purchasers into buying a franchise or business opportunity, and franchisors' and business opportunity sellers' failure to honor promised refund requests.  The Commission concluded that all of these practices led to serious economic harm to consumer.

35. To prevent deceptive and unfair practices in the sale of franchises and business opportunities and to correct consumers' misimpressions about franchise and business

opportunity offerings, the Commission adopted the original Franchise Rule which was later amended after a regulatory review in 1995.

36. The FTC Act defines an unfair act or practice as one that is "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. 45(n).

37. The FTC Rule is designed to require sellers of franchises to provided prospective investors with the information they need to make an informed investment decision.  The FTC Rule permits franchisors to use a uniform disclosure format which has been adopted by every state known as the "Franchise Disclosure Document" or "FDD" (formerly known as "Uniform Franchise Offering Circular" or "UFOC").  Each topic of disclosure in a FDD is referred to as an "Item" numbered 1 to 23 16 CFR Part 436.5.  Some of the most basic Items are the following:

38. Item 5 mandates disclosure of initial fees.  Initial fees means all fees and payments, or commitments to pay, for services or goods received from the franchisor or any affiliate before the franchisee's business opens.

39. Item 6 mandates detailed disclosure of all other fees payable by the franchisee to the franchisor or its affiliates or that the franchisor or its affiliates impose or collect in whole or in part for a third party including but not limited to royalties, fees for additional training or assistance, advertising, cooperatives, accounting, and inventory.

40. Item 7 requires the franchisor to describe in detail the expenditures the franchisee should anticipate making on or before the commencement of business operations.  The franchisor must be able to support its estimate from the actual experience of its franchisors.  Fern, Costello and Asbill, Vol. 1 *Franchising Law Practice and Forms,* at 6-

15 Specialty Technical Publishers (2005).

41. Item 8 requires disclosure of any restrictions imposed by the franchisor on the
    franchisee's purchase of products and services.   Franchisors must disclose the
    franchisee's obligations to purchase or lease, including but not limited to, goods, services,
    supplies, fixtures, equipment, inventory, and computer hardware and software related to
    establishing or operating the franchised business either from the franchisor, its designee,
    or suppliers approved by the franchisor or under the franchisor's specifications.  The
    franchisor must also disclose whether it or its affiliates will derive revenue or other
    material consideration from required purchases by franchisees.   If an obligation is
    imposed in practice, disclosure must be made, even if there is no contractual requirement.
    *Id.*

42. Item 12 concerns disclosure of a specific location or territory granted to the franchisee.

43. Item 19 concerns "earnings claims" or representations of a franchisee's prospective
    financial performance.  While the FTC permits a franchisor to make earnings claims
    (though most reputable franchisors do not), the FTC Rule prohibits the making of
    earnings claims *except* as part of a detailed disclosure in Item 19. 16 C.F.R.  436.5(s).
    Earnings claims in an advertising brochure, in a slide presentation, in a verbal sales
    presentation or on the back of any envelope, are prohibited.  Vol. 1 *Franchising Law
    Practice and Forms*, at 6-23.

44. Item 20 requires the franchisor to fully disclose information concerning its current and
    former franchisees, including the number of franchisees whose ownership was transferred
    or whose franchise was canceled, terminated, or not renewed or have ceased doing
    business in the system.  A pattern of abandonment, sales, terminations and non-renewals

indicates a sick franchise.

## II.      The Timing of Federal Disclosure

45. In addition to providing a format for disclosures, the FTC Rule specifies when a

disclosure document must be given to the prospective franchisee.  Such timing

requirements are intended to ensure that franchisees have a "cooling off" period in which

to evaluate the disclosure document before paying any monies to the franchisor and

before executing agreements binding on the prospective franchisee.

46. Under the Rule, the prospective franchisee must be provided a disclosure document upon

the *earliest* to occur of any of the following three events:

    a.   The first face to face meeting with a franchisee;

    b.   10 business days prior to the execution of a franchise agreement; or

    c.   10 business days prior to payment by a prospective franchisee.

47. Violations of the FTC Rule are considered unfair or deceptive acts within the meaning of

Section 5 of the Federal Trade Commission Act.

## III.      State Disclosure Laws

48. The FTC Rule does not preempt state disclosure laws to the extent that they provide

greater protection that it does.  Several do, including Nebraska and Indiana as set forth

below.

## IV.      Complete Nutrition Sales Efforts

49. Complete Nutrition's sales pitch was hard and contained numerous misrepresentations

intended to be relied upon by the potential franchisees, including Plaintiffs.

50. The Plaintiffs in this case each had an interest in owning a franchise and, at some point,

became specifically interested in a Complete Nutrition franchise.

51. As part of their investigation, the Plaintiffs visited Complete Nutrition's website.  The website boasted the accomplishments of Complete Nutrition and its franchisees, the potential success of a Complete Nutrition franchise, favorable magazine articles which boasted the success of Complete Nutrition, including, but not limited to, the number of locations and a booming industry, average gross sales of over $800,000, and even went as far to claim immunity from an unstable economy.  While the content has changed over the years, the general concept is the same, and it was the website, reinforced with verbal sales pitches, that enticed Plaintiffs to purchase a Complete Nutrition franchise(s).

52. Among other various representations, written and verbal, Complete Nutrition represented to each Plaintiff that it would provide them with opening support, training, ongoing support, marketing, internal and external promotions to generate business, advertising, brand maintenance, proprietary products, a proven operating system, and more.  These representations were made to and relied upon by Plaintiffs in their decision to purchase a Complete Nutrition franchise(s).

53. For instance, Complete Nutrition, by and through its representatives and its own website, boasted information, including but not limited to, the following:

    a. "Join the $8.4 Billion weight-loss and sports nutrition industry…Just as our innovative products prepare our customers to achieve success in their personal goals, our philosophies and proven systems help our franchisees to achieve professional success by turning their passion into profits."  (Exhibit 3)

    b. "Excellent earnings potential. Quick ramp-up. Item 19 with highest average revenues in the industry. $8.4 B Growing Industry. Personally-rewarding business helping others. Excellent, unique, experiential, proprietary products. 67% of our

eCommerce sales are given to our franchisees – We don't compete with our franchisees. We seek our success through the success of our franchisees – Royalty incentive programs." (Exhibit 3)

c. "THE BEST IN A BOOMING INDUSTRY." (Exhibit 4)

d. "A SYSTEM BUILD TO HELP YOU SUCCEED." (Exhibit 4)

e. "BECOME A FRANCHISE OWNER IN A BOOMING INDUSTRY- $812,068 Average Gross Sales" (Exhibit 4)

f. "Unique Business Model" (Exhibit 5)

g. "Franchisee Focused: We give 67% of all ecommerce profits to our franchisees! Unlike other brands. Complete Nutrition does not compete with our franchisees via online or company stores. Everything we do is to make our franchisees successful." (Exhibit 5)

h. "Complete Nutrition offers a combination of profitability and long-term sustainability, with attractive cost of entry, opportunity for exclusive territories, and comprehensive corporate support in an industry segment that continues to soar." (Exhibit 6)

i. "Despite an unstable economy, health stores and weight loss services have been and continue to be on the rise." (Exhibit 7)

j. "Advanced Operations, Advanced Support. Staying ahead of the curves takes dedicated preparation and maintenance. We provide both for our franchisees." (Exhibit 7)

k. "Training: - "Become Complete" University – New franchisee training at home office – Online support portal – Extensive in-store training – Ongoing field

operation support." (Exhibit 7)

l.  "Marketing: - Radio print and TV advertising – Direct mail campaigns – Outdoor advertising and branding – Community events and partnerships – Email and online campaigns – In-store promotions and events." (Exhibit 7)

m.  Drive Repeat Business & Frequency: "Landing Page Development," "Digital/CRM Marketing," "National Brand Ambassadors," "Salesforce Marketing Cloud Journeys & Campaign Content," "Social Media Content," "SEO," "Customer Journey Development," "Retail Promotional Calendar," "Customer Experience Tools," "Marketing Tools," "Planogram," "Campaign Creative/Media Development," "Media Planning/Buying Partner," and "Company Store/Vendor Partners." (Exhibit 8)

n.  Real Estate Support: "The Team: Project Manager, National Broker, Local Broker," "Territory Analysis: Demographics, Co-Tenants, Fitness Density, Visibility," "Site Selection, Site Approval, LOI Process, Concessions Negotiation, Initial Design, Due Diligence, Lease Review & Revision." (Exhibit 8)

o.  Construction Management: "The Team: One Source Retail, Project Manager, Design Supervisor," "Due Diligence: As-Built Conditions Survey, Site Investigation Report, Space Planning, Lease Reviews & DD Summary," "Project Management: Project Flow, Competitive Bidding, Site Visits & Meetings, Monitoring & Reporting, Vendor Coordination, Administrative, Representation, Hard Construction, Turnover, Project Close Out." (Exhibit 8)

p.  On-Site Training: "Post-Boot Camp Training: Trainer spends 5 days in your store, will help set up store, help further train & interview employees, train on opening

and closing procedures, and train on LSM techniques." (Exhibit 8)

q. "Franchising is all about relationships; Culture – we do the right thing; We partner with our franchisees and are laser focused on franchise profitability; 'No Excuses' Mentality – We learn from our mistakes and build on our successes, We believe in being transparent and doing what we say we will do; Exclusive territories offered to franchisee to build their customer base." (Exhibit 9)

r. "Brick & Click – 100% of on-line profits go to the franchisees" (Exhibit 9)

s. Support: Over 50 employees at the Home office to support 160 franchise location; Exclusive proprietary products manufacture in the USA; All products manufactured in the USA at Good Manufacturing Practices 'GMP' facilities; 3 weeks of initial training – 2 weeks in Omaha and 1 week in your market; Technology enabled with the dashboard and franchisee portal; Inventory Control Program." (Exhibit 9)

t. "100% OF ONLINE SALE PROFITS GO TO THE FRANCHISEE!" (Exhibit 9)

u. "EXCLUSIVE SUPPLEMENT LINES" (Exhibit 9)

V.   Opening and Operating a Complete Nutrition Franchise

54. As a prospective franchisee, Plaintiffs relied on information contained in the Franchise Disclosure Document (hereinafter referred to as "FDD") and/or many other representations made to them by Complete Nutrition at their peril.  Most franchisees discovered that upon opening and operating their locations, the numbers contained in the FDD and/or those figures otherwise represented to them were grossly underestimated, overestimated, and/or inaccurate.

a.   "80% of stores are over the system average" (Exhibit 9)

## Sales                                                                 | 14

## 80% of stores are over the system average

| 2015 Sales | |
|---|---|
| **RANK** | **AVG GROSS SALES** |
| *System Avg.* | *$583,789* |
| Top 20% | $941,708 |
| Top 40% | $812,068 |
| Top 60% | $727,949 |
| Top 80% | $656,733 |
| Bottom 20% | $302,432 |

FRANCHISE FASTLANE, LLC ("FF") is a franchise seller/broker representing Complete Nutrition Franchising, LLC ("Complete Nutrition"). This advertisement does not constitute a franchise offering or the solicitation of an offer to buy a Complete Nutrition franchise which may be made only after your receipt of Complete Nutrition's current Franchise Disclosure Document, which first must be registered with certain states. Complete Nutrition franchises are offered solely by means of the franchise disclosure document issued by Complete Nutrition Franchising, LLC 17220 Wright Street, Suite 200, Omaha, Nebraska 68130, 866-369-5768. Certain states and foreign countries have laws governing the offer and sale of franchises. If you are a resident of one of these states or foreign countries, Complete Nutrition will not offer you a franchise unless and until it has complied with all applicable legal requirements in your jurisdiction. Please consult with your franchise seller/broker at FF for an updated list of jurisdictions where franchises can be sold.

Copyright© 2016 , FRANCHISE FASTLANE LLC. ALL RIGHTS RESERVED.



b.  Average Unit Sales Volume & EBITDA (Exhibit 9)

## Average Unit Sales Volume & EBITDA | 15

| | Jan.-Apr. 2016 | |
|---|---|---|
| | Amount | % of Net Sales |
| NET SALES | $191,578.58 | |
| | | |
| COST OF GOODS SOLD | $72,290.19 | 37.7% |
| CLUB DISCOUNT | $5,484.94 | 2.9% |
| ROYALTY | $9,274.90 | 4.8% |
| CREDIT-CARD FEES | $3,191.46 | 1.7% |
| ADVERTISING | $16,175.66 | 8.4% |
| PAYROLL | $33,580.53 | 17.5% |
| RENT | $15,313.16 | 8.0% |
| UTILITIES | $1,683.75 | 0.9% |
| OTHER EXPENSES | $12,870.66 | 6.7% |
| ADD BACK OWNERS SALARY* | -$7,869.00 | -4.1% |
| ADD BACK OTHER GENERAL AND ADMINISTRATIVE EXPENSES* | -$1,721.00 | -0.9% |
| STORE LEVEL EBITDA | $31,303.50 | 16.3% |

FRANCHISE FASTLANE, LLC ("FF") is a franchise seller/broker representing Complete Nutrition Franchising, LLC ('Complete Nutrition') This advertisement does not constitute a franchise offering or the solicitation of an offer to buy a Complete Nutrition franchise which may be made only after your receipt of Complete Nutrition's current Franchise Disclosure Document, which first must be registered with certain states. Complete Nutrition franchises are offered solely by means of the franchise disclosure document issued by Complete Nutrition Franchising, LLC 17220 Wright Street, Suite 200, Omaha, Nebraska 68130, 888-366-5769. Certain states and foreign countries have laws governing the offer and sale of franchises. If you are a resident of one of these states or foreign countries, Complete Nutrition will not offer you a franchise unless and until it has complied with all applicable legal requirements in your jurisdiction. Please consult with your franchise seller/broker at FF for an updated list of jurisdictions where franchises can be sold.

Copyright© 2016 ; FRANCHISE FASTLANE LLC. ALL RIGHTS RESERVED.


55. Complete Nutrition even provided the franchisee with their open specific projection
models. (Exhibit 10)

56. Once a prospect signed a franchise agreement and had received their financing, Complete
Nutrition provided virtually none of the services represented to them including those
normally expected from a franchisor and those provided to them in the franchise
agreements.

57. Complete Nutrition continued to tout the benefits Plaintiffs expected to receive even after
the franchise agreements were signed, including but not limited to:

    a. "The CN Home Office will host a live webinar monthly." (Exhibit 11)

    b. "A Planogram update is sent out each quarter….To create a uniform and consistent appearance between all Complete Nutrition locations to maximize on sales and overall customer experience." (Exhibit 12)

    c. "The Home office marketing services support team provides creative and marketing support to franchisees." (Exhibit 13)

    d. "E-Commerce: Attribution: Store credits received by zip code from E-commerce sales. Attribution is received as a credit on the quarterly." (Exhibit 14)

    e. "CN Support Center Overview: Purpose: To provide one-point of contact for support to the entire Complete Nutrition family by managing and maintaining the Support Center infrastructure and by providing governance and reporting capabilities." (Exhibit 15)

    VI.   Franchisor's Responsibilities Under Franchise Agreement

58. Under the franchise agreements signed by each and every Plaintiff herein, the franchisor agreed to assume certain responsibilities.

59. These responsibilities include, but were not limited to, initial training, ongoing and supplemental training, general guidance, advertising, marketing, confidential information and the processing, developing, and acquiring of confidential information, and maintaining the goodwill associated with the confidential information, along with providing knowledge, know-how and expertise.

60. In general, the Franchisor assumed the duty to maintain, monitor, advise, advance, protect, market, and more.

61. "A franchise is a system or a business model with three critical components: 1) the

Brand 2) the operating system and 3) the ongoing support provided by the franchisor."
(Exhibit 16)

62. "At the head of the franchising business model is the Franchisor, the entity charged with establishing a brand through its trademarks and service marks, trade dress and décor and other factors that create customer loyalty and build equity in the brand.  The Franchisor is further charged with establishing an operating system that enables the franchisees to maintain customer relationships and build loyalty.  Finally, the Franchisor provides the necessary support and training to ensure the growth and continued value of the franchise business model as a whole." (Exhibit 16)

63. Plaintiffs never received ongoing support, know-how, and/or expertise.

64. Plaintiffs received minimal advertising in comparison to the millions of dollars a year they contributed to an advertising budget.

65. Part of maintaining the brand, includes providing care, support, and commitment to the franchisees that are the cornerstone of brand recognition.  Without franchisees, Complete Nutrition could never have built the brand to which it claims all rights.

66. Had Plaintiffs been aware of the lack of support, commitment, maintenance, and general good faith of Complete Nutrition, they would have never executed a franchise agreement nor invested substantial amounts of time and money.

<u>COUNT 1: DONOVAN MIDDLETON – LAS VEGAS</u>
<u>BREACH OF CONTRACT</u>

COMES NOW, Plaintiff and for his cause of action against Defendants, state as follows:

67. Plaintiff realleges and incorporates by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 66 of this Amended Complaint.

68. That Plaintiff and Defendants entered into a written franchise agreement concerning the operation of his store.  (EXHIBIT 17)

69. That pursuant to that franchise agreement, Defendants agreed to provide the following, including but not limited to:

    a.  Site Selection, Lease, & Developing the Store (Section 2);

    b.  Ongoing Training (Section 4);

    c.  Ongoing Support (Section 4);

    d.  General Guidance (Section 4);

    e.  Advertising (Section 7);

    f.  Confidential Information (Section 11).

70. That Defendants have failed to meet its obligations under the franchise agreement by failing to provide ongoing training, ongoing support, general guidance, and little to no advertising.

71. That as a direct and proximate result of the breach of Defendants as aforesaid, Plaintiff sustained damage.

      WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, his costs herein expended, and for such other relief that the Court deems just and proper.

<u>COUNT 2: DONOVAN MIDDLETON – LAS VEGAS</u>
<u>BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING</u>

COMES NOW, Plaintiff and for his cause of action against Defendants, state as follows:

72. Plaintiff realleges and incorporates by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 66 of this Amended Complaint.

73. That Plaintiff and Defendants entered into a written franchise agreement concerning the operation of his store.  (EXHIBIT 17)

74. That the franchise agreement executed by Defendants contained an implied covenant that Defendants would act in good faith and deal fairly with Plaintiff in the discharge of its duties under the franchise agreements.

75. That pursuant to the franchise agreement executed by the parties, Plaintiff justifiably expected that Defendants would provide a sustainable franchise system, would provide ongoing support, would provide marketing efforts, and that Defendants would not undertake actions to solely benefit Defendants at the expense of Plaintiff or other franchisees within the system.

76. That Defendants did not provide a sustainable franchise system, ongoing support, nor marketing efforts and took actions solely to benefit Defendants at the expense of Plaintiff in direct violation of the implied covenant of good faith and fair dealing.

77. That as a direct and proximate result of the breach of Defendants of the implied covenant of good faith and fair dealing as aforesaid, Plaintiff sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, his costs herein expended, and for such other relief that the Court deems just and proper.

## COUNT 3: DONOVAN MIDDLETON – LAS VEGAS
## NEGLIGENT MISREPRESENTATION

Come now, Plaintiff and for his cause of action against Defendants, state as follows:

78. Plaintiff re-alleges and incorporates by reference as if fully set forth herein Paragraphs 1 to 66 of Plaintiffs' Amended Complaint.

79. Defendants owed a duty of reasonable care to Plaintiff in providing information relating to Plaintiff's franchise relationship with Defendants, including but not limited to, the financial viability of the franchisor and the pending sale of a controlling interest of the franchisor by founder Cory Weidel and Ryan Zink to a private equity firm.

80. Defendants knew or should have known that such information was material.

81. Defendants breached its duty of reasonable care to Plaintiff by providing false and/or misleading information and/or omitting to disclose relevant and material information concerning the franchisor as alleged herein.

82. Plaintiff justifiably and actually relied to his detriment upon information provided by Defendants.

83. That had Plaintiff been aware of the pending sale of the franchisor and the financial distress of the franchisor, Plaintiff would not have entered into the franchise agreement with Defendants and would not have suffered the losses alleged herein.

WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, his costs herein expended, and for such other relief the Court deems just and proper.

<u>COUNT 4: DONOVAN MIDDLETON – LAS VEGAS</u>
<u>FRAUDULENT MISREPRESENTATION/FRAUDULENT CONCEALMENT</u>

Come now, Plaintiff and for his cause of action against Defendants, state as follows:

84. Plaintiff re-alleges and incorporates by reference as if fully set forth herein, paragraphs 1 to 66 of Plaintiffs' Amended Complaint.

85. As alleged herein, Defendants made misrepresentations that it knew or should have known to be false, and concealed material information that it had a duty to disclose to Plaintiff.

86.  In particular, Defendants fraudulently misrepresented and/or concealed the specific allegations detailed above in Paragraph 53 including the subparagraphs a through u, Paragraph 54 including the subparagraphs a through b, and Paragraph 55.

87. Furthermore, Defendants fraudulently misrepresented and/or concealed the details of Item 19 in their Franchise Disclosure Document.  Specifically, Item 19 contained misleading financial performance information in that it failed to account for differences in markets throughout the United States and other essential material and relevant information which would have clarified the information.

88. Plaintiff reasonably and justifiably relied upon the statements and information of Defendants, believes that Defendants were acting truthfully, honestly, and in accordance with its obligations, and otherwise in Plaintiff's best interests.  Plaintiff relied upon such statements and information to his detriment in executing the franchise agreement discussed herein.

89. That as a direct and proximate result of the actions of Defendants as aforesaid, Plaintiff has sustained significant financial damages.

WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, his costs herein expended, and for such other relief the Court deems just and proper.

## COUNT 5: DONOVAN MIDDLETON – LAS VEGAS
## VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT

Come now, Plaintiff and for his cause of action against Defendants, state as follows:

90. Plaintiff realleges and incorporates by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 66 of this Amended Complaint.

91. The Nebraska Deceptive Trade Practices Act §87-301 through §87-303.12, is intended to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

92. That the actions of Defendants, as fully set forth above, are unconscionable actions or courses of actions and constitute violations of the Deceptive Trade Practices Act §87-302 et seq.

93. In violation of the Deceptive Trade Practices Act, Defendants' actions, without limitation: (1) used a scheme or device to defraud by means of obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises.

94. Defendants concealed, withheld from discovery and suppressed the facts giving rise to the aforesaid claim, including but not limited to the specific allegations in Paragraph 53 including the subparagraphs a through u, Paragraph 54 including the subparagraphs a through b, and Paragraph 55.

95. That the conduct of Defendants as aforesaid was intentional and deliberate.

96. That as a result of the aforesaid actions and courses of action of the Defendants, Plaintiff sustained damages.

97. That Plaintiff is entitled to all relief allowed under the law, including an award of damages, an award of attorneys' fees and costs, and preliminary and permanent injunctive relief.

WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, his costs herein expended, and for such other relief that the Court deems just and proper.

COUNT 6: HARVESTER NUTRITION LLC – GRAND JUNCTION
BREACH OF CONTRACT

COMES NOW, Plaintiff and for its cause of action against Defendants, state as follows:

98. Plaintiff realleges and incorporates by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 66 of this Amended Complaint.

99. That Plaintiff and Defendants entered into a written franchise agreement concerning the operation of his store.  (EXHIBIT 18)

100.    That pursuant to that franchise agreement, Defendants agreed to provide the following, including but not limited to:

   a.   Site Selection, Lease, & Developing the Store (Section 2);

   b.   Ongoing Training (Section 4);

   c.   Ongoing Support (Section 4);

   d.   General Guidance (Section 4);

   e.   Advertising (Section 7);

   f.   Confidential Information (Section 11).

101.    That Defendants have failed to meet its obligations under the franchise agreement by failing to provide ongoing training, ongoing support, general guidance, and little to no advertising.

102.      That as a direct and proximate result of the breach of Defendants as aforesaid, Plaintiff sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, its costs herein expended, and for such other relief that the Court deems just and proper.

<u>COUNT 7: HARVESTER NUTRITION LLC– GRAND JUNCTION</u>
<u>BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING</u>

COMES NOW, Plaintiff and for its cause of action against Defendants, state as follows:

103.      Plaintiff realleges and incorporates by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 66 of this Amended Complaint.

104.      That Plaintiff and Defendants entered into a written franchise agreement concerning the operation of its store.  (EXHIBIT 18)

105.      That the franchise agreement executed by Defendants contained an implied covenant that Defendants would act in good faith and deal fairly with Plaintiff in the discharge of its duties under the franchise agreements.

106.      That pursuant to the franchise agreement executed by the parties, Plaintiff justifiably expected that Defendants would provide a sustainable franchise system, would provide ongoing support, would provide marketing efforts, and that Defendants would not undertake actions to solely benefit Defendants at the expense of Plaintiff or other franchisees within the system.

107.      That Defendants did not provide a sustainable franchise system, ongoing support, nor marketing efforts and took actions solely to benefit Defendants at the expense of Plaintiff in direct violation of the implied covenant of good faith and fair dealing.

108.     That as a direct and proximate result of the breach of Defendants of the implied covenant of good faith and fair dealing as aforesaid, Plaintiff sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, its costs herein expended, and for such other relief that the Court deems just and proper.

COUNT 8: HARVESTER NUTRITION LLC – GRAND JUNCTION<br>NEGLIGENT MISREPRESENTATION

Come now, Plaintiff and for its cause of action against Defendants, state as follows:

109. Plaintiff re-alleges and incorporates by reference as if fully set forth herein Paragraphs 1 to 66 of Plaintiffs' Amended Complaint.

110. Defendants owed a duty of reasonable care to Plaintiff in providing information relating to Plaintiff's franchise relationship with Defendants, including but not limited to, the financial viability of the franchisor in that they failed to disclose that Defendant Dominus Health Intermediate Holdco, LLC was in default and/or struggling to satisfy its agreement with the secured lender, Monroe Capital, LLC, and that the franchisor was undercapitalized.

111. Defendants knew or should have known that such information was material.

112. Defendants breached its duty of reasonable care to Plaintiff by providing false and/or misleading information and/or omitting to disclose relevant and material information concerning the franchisor as alleged herein.

113. Plaintiff justifiably and actually relied to its detriment upon information provided by Defendants.

114. That had Plaintiff been aware of the financial distress of the franchisor, Plaintiff would not have entered into the franchise agreement with Defendants and would not have suffered the losses alleged herein.

WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, its costs herein expended, and for such other relief the Court deems just and proper.

<u>COUNT 9: HARVESTER NUTRITION LLC – GRAND JUNCTION</u>
<u>FRAUDULENT MISREPRESENTATION/FRAUDULENT CONCEALMENT</u>

Come now, Plaintiff and for its cause of action against Defendants, state as follows:

115. Plaintiff re-alleges and incorporates by reference as if fully set forth herein, paragraphs 1 to 66 of Plaintiffs' Amended Complaint.

116. As alleged herein, Defendants made misrepresentations that it knew or should have known to be false, and concealed material information that it had a duty to disclose to Plaintiff.

117. In particular, Defendants fraudulently misrepresented and/or concealed the specific allegations detailed above in Paragraph 53 including the subparagraphs a through u, Paragraph 54 including the subparagraphs a through b, and Paragraph 55.

118. Furthermore, Defendants fraudulently misrepresented and/or concealed the details of Item 19 in their Franchise Disclosure Document.  Specifically, Item 19 contained misleading financial performance information in that it failed to account for differences in markets throughout the United States and other essential material and relevant information which would have clarified the information.

119. Plaintiff reasonably and justifiably relied upon the statements and information of Defendants, believes that Defendants were acting truthfully, honestly, and in accordance

with its obligations, and otherwise in Plaintiff's best interests.  Plaintiff relied upon such statements and information to its detriment in executing the franchise agreement discussed herein.

120.     That as a direct and proximate result of the actions of Defendants as aforesaid, Plaintiff has sustained significant financial damages.

         WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, its costs herein expended, and for such other relief the Court deems just and proper.


## COUNT 10: HARVESTER NUTRITION LLC – GRAND JUNCTION VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT

         Come now, Plaintiff and for its cause of action against Defendants, state as follows:

121.     Plaintiff realleges and incorporates by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 66 of this Amended Complaint.

122.     The Nebraska Deceptive Trade Practices Act §87-301 through §87-303.12, is intended to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

123.     That the actions of Defendants, as fully set forth above, are unconscionable actions or courses of actions and constitute violations of the Deceptive Trade Practices Act §87-302 et seq.

124.     In violation of the Deceptive Trade Practices Act, Defendants' actions, without limitation: (1) used a scheme or device to defraud by means of obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises.

125.     Defendants concealed, withheld from discovery and suppressed the facts giving rise to the aforesaid claim, including but not limited to the specific allegations in Paragraph 53 including the subparagraphs a through u, Paragraph 54 including the subparagraphs a through b, and Paragraph 55.

126.     That the conduct of Defendants as aforesaid was intentional and deliberate.

127.     That as a result of the aforesaid actions and courses of action of the Defendants, Plaintiff sustained damages.

128.     That Plaintiff is entitled to all relief allowed under the law, including an award of damages, an award of attorneys' fees and costs, and preliminary and permanent injunctive relief.

     WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, its costs herein expended, and for such other relief that the Court deems just and proper.

### COUNT 11: HARVESTER NUTRITION LLC - HENDERSON
### BREACH OF CONTRACT

     COMES NOW, Plaintiff and for its cause of action against Defendants, state as follows:

129.     Plaintiff realleges and incorporates by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 66 of this Amended Complaint.

130.     That Plaintiff and Defendants entered into a written franchise agreement concerning the operation of its store.  (EXHIBIT 19)

131.     That pursuant to that franchise agreement, Defendants agreed to provide the following, including but not limited to:

    a.   Site Selection, Lease, & Developing the Store (Section 2);

    b.   Ongoing Training (Section 4);

    c.   Ongoing Support (Section 4);

    d.   General Guidance (Section 4);

    e.   Advertising (Section 7);

    f.   Confidential Information (Section 11).

132.     That Defendants have failed to meet its obligations under the franchise agreement by failing to provide ongoing training, ongoing support, general guidance, and little to no advertising.

133.     That as a direct and proximate result of the breach of Defendants as aforesaid, Plaintiff sustained damage.

    WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, its costs herein expended, and for such other relief that the Court deems just and proper.

## COUNT 12: HARVESTER NUTRITION LLC - HENDERSON
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

COMES NOW, Plaintiff and for its cause of action against Defendants, state as follows:

134.     Plaintiff realleges and incorporates by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 66 of this Amended Complaint.

135.     That Plaintiff and Defendants entered into a written franchise agreement concerning the operation of its store.  (EXHIBIT 19)

136.     That the franchise agreement executed by Defendants contained an implied covenant that Defendants would act in good faith and deal fairly with Plaintiff in the discharge of its duties under the franchise agreements.

137.     That pursuant to the franchise agreement executed by the parties, Plaintiff justifiably expected that Defendants would provide a sustainable franchise system, would provide ongoing support, would provide marketing efforts, and that Defendants would not undertake actions to solely benefit Defendants at the expense of Plaintiff or other franchisees within the system.

138.     That Defendants did not provide a sustainable franchise system, ongoing support, nor marketing efforts and took actions solely to benefit Defendants at the expense of Plaintiff in direct violation of the implied covenant of good faith and fair dealing.

139.     That as a direct and proximate result of the breach of Defendants of the implied covenant of good faith and fair dealing as aforesaid, Plaintiff sustained damage.

WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, its costs herein expended, and for such other relief that the Court deems just and proper.

<u>COUNT 13: HARVESTER NUTRITION LLC - HENDERSON<br>NEGLIGENT MISREPRESENTATION</u>

Come now, Plaintiff and for its cause of action against Defendants, state as follows:

140. Plaintiff re-alleges and incorporates by reference as if fully set forth herein Paragraphs 1 to 66 of Plaintiffs' Amended Complaint.

141. Defendants owed a duty of reasonable care to Plaintiff in providing information relating to Plaintiff's franchise relationship with Defendants, including but not limited to, the financial viability of the franchisor in that they failed to disclose that Defendant Dominus Health Intermediate Holdco, LLC was in default and/or struggling to satisfy its agreement with the secured lender, Monroe Capital, LLC, and that the franchisor was undercapitalized.

142. Defendants knew or should have known that such information was material.

143. Defendants breached its duty of reasonable care to Plaintiff by providing false and/or misleading information and/or omitting to disclose relevant and material information concerning the franchisor as alleged herein.

144. Plaintiff justifiably and actually relied to its detriment upon information provided by Defendants.

145. That had Plaintiff been aware of the financial distress of the franchisor, Plaintiff would not have entered into the franchise agreement with Defendants and would not have suffered the losses alleged herein.

WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, its costs herein expended, and for such other relief the Court deems just and proper.

<u>COUNT 14: HARVESTER NUTRITION LLC - HENDERSON</u>
<u>FRAUDULENT MISREPRESENTATION/FRAUDULENT CONCEALMENT</u>

Come now, Plaintiff and for its cause of action against Defendants, state as follows:

146. Plaintiff re-alleges and incorporates by reference as if fully set forth herein, paragraphs 1 to 66 of Plaintiffs' Amended Complaint.

147.     As alleged herein, Defendants made misrepresentations that it knew or should have known to be false, and concealed material information that it had a duty to disclose to Plaintiff.

148.      In particular, Defendants fraudulently misrepresented and/or concealed the specific allegations detailed above in Paragraph 53 including the subparagraphs a through u, Paragraph 54 including the subparagraphs a through b, and Paragraph 55.

149.     Furthermore, Defendants fraudulently misrepresented and/or concealed the details of Item 19 in their Franchise Disclosure Document.  Specifically, Item 19 contained misleading financial performance information in that it failed to account for differences in markets throughout the United States and other essential material and relevant information which would have clarified the information.

150.     Plaintiff reasonably and justifiably relied upon the statements and information of Defendants, believes that Defendants were acting truthfully, honestly, and in accordance with its obligations, and otherwise in Plaintiff's best interests.  Plaintiff relied upon such statements and information to its detriment in executing the franchise agreement discussed herein.

151.     That as a direct and proximate result of the actions of Defendants as aforesaid, Plaintiff has sustained significant financial damages.

WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, its costs herein expended, and for such other relief the Court deems just and proper.

COUNT 15: HARVESTER NUTRITION LLC - HENDERSON
VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT

Come now, Plaintiff and for its cause of action against Defendants, state as follows:

152.　　　Plaintiff realleges and incorporates by reference as a fully set forth herein of each and every allegation contained in Paragraphs 1 through 66 of this Amended Complaint.

153.　　　The Nebraska Deceptive Trade Practices Act §87-301 through §87-303.12, is intended to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

154.　　　That the actions of Defendants, as fully set forth above, are unconscionable actions or courses of actions and constitute violations of the Deceptive Trade Practices Act §87-302 et seq.

155.　　　In violation of the Deceptive Trade Practices Act, Defendants' actions, without limitation: (1) used a scheme or device to defraud by means of obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises.

156.　　　Defendants concealed, withheld from discovery and suppressed the facts giving rise to the aforesaid claim, including but not limited to the specific allegations in Paragraph 53 including the subparagraphs a through u, Paragraph 54 including the subparagraphs a through b, and Paragraph 55.

157.　　　That the conduct of Defendants as aforesaid was intentional and deliberate.

158.　　　That as a result of the aforesaid actions and courses of action of the Defendants, Plaintiff sustained damages.

159.    That Plaintiff is entitled to all relief allowed under the law, including an award of damages, an award of attorneys' fees and costs, and preliminary and permanent injunctive relief.

WHEREFORE, for the foregoing reasons, Plaintiff prays judgment against Defendants in a sum that is fair and reasonable, its costs herein expended, and for such other relief that the Court deems just and proper.

<u>COUNT 16: PIERCING THE CORPORATE VEIL</u>

Come now Plaintiffs and for Count 16 of their cause of action against Defendants Complete Nutrition Franchise Holdings, CR Holdings, LLC, Dominus Intermediate Holdco, LLC and Dominus Health Holdings, LLC and state as follows:

160.    As previously stated, on December 16, 2015 Defendant Dominus Health Holdings, LLC made an investment into the Complete Nutrition franchise system through its investment vehicle and wholly owned subsidiary and/or operating company Defendant Dominus Health Intermediate Holdco, LLC.

161.    After that transaction, Defendant Dominus Health Holdings, LLC assumed control and management of the Complete Nutrition franchise system.

162.    Defendant Complete Nutrition Franchise Holdings, LLC and Defendant CR Holdings, LLC became wholly-owned by Defendant Dominus Health Holdings, LLC.

163.    That at and after the time of this transaction, Defendant Complete Nutrition Franchising, LLC was grossly undercapitalized and unable to provide the services to Plaintiffs required under the franchise agreements existing with Plaintiffs and other Complete Nutrition franchisees.

164.     That at the time the claims of Plaintiffs arose, Defendant Complete Nutrition Franchising, LLC was insolvent as evidenced by the default to its secured lender and the resulting foreclosure and sale of the majority of its assets by and to the secured lender.

165.     That Defendant Dominus Health Holdings, LLC entered into an agreement with its secured lender which has resulted in Defendant Complete Nutrition Franchising, LLC being unable to provide any services to the Plaintiffs and to, in effect, render it judgment proof.  Such action was taken by Defendant Dominus Health Holdings, LLC to divert assets of Complete Nutrition, LLC for an improper purpose.  The diversion of assets was undertaken in an effort to protect Dominus Health Holdings, LLC from claims of its secured lender which, in turn, made it impossible for Complete Nutrition Franchising, LLC to operate.

166.     That in the meantime, the franchise agreements existing with the vast majority of Complete Nutrition franchisees have been transferred to another entity who has sufficient assets to comply with requirements of the franchisor under the franchise agreements.

WHEREFORE, for the foregoing reasons, Plaintiffs seek an Order from this Court piercing the corporate veil of Defendant Complete Nutrition Franchising, LLC, and permitting Plaintiffs to proceed with their causes of actions against Defendants Complete Nutrition Franchise Holdings, LLC, CR Holdings, LLC, Dominus Intermediate Holdco, LLC and Dominus Health Holdings, LLC.

## **Demand for Jury Trial**

Plaintiffs hereby demand trial by jury on all claims so triable.

DATED this 18th day of December, 2018.


/s/ Jonathan E. Fortman_____
Jonathan E. Fortman
Law Office of Jonathan E. Forman, LLC
250 Saint Catherine Street
Florissant, MO 63031
Telephone: (314) 522-2312
Email: jef@fortmanlaw.com

*Attorney for Plaintiffs*


<u>**Service**</u>


A true and accurate copy of the forgoing has been served upon Defendant Complete Nutrition Franchising, LLC via the Court's ECF Filing system.

/s/ Jonathan E. Fortman_____