UNITED STATED DISTRICT COURT
DISTRICT OF NEBRASKA
OMAHA DIVISION

| | | |
|---|---|---|
| DONOVAN MIDDLETON and HARVESTER NUTRITION, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case Number: 8:18-CV-115 |
| | ) | |
| v. | ) | |
| | ) | |
| COMPLETE NUTRITION FRANCHISING, LLC, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| COMPLETE NUTRITION FRANCHISE HOLDINGS, LLC, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| CR HOLDINGS, LLC, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| DOMINUS HEALTH INTERMEDIATE HOLDCO, LLC, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| DOMINUS HEALTH HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendants, Complete Nutrition Franchising, LLC, Complete Nutrition Franchise Holdings, LLC, CR Holdings, LLC, Dominus Health Intermediate Holdco, LLC, and Dominus Health Holdings, LLC, by their undersigned counsel, Saul Ewing Arnstein & Lehr LLP and Woods & Aitken LLP, respectfully move this Court, pursuant to Federal Rule of Civil Procedure

1

12(b)(6), to dismiss Plaintiffs Donovan Middleton and Harvester Nutrition, LLC's Amended Complaint. In support, Defendants state as follows:

## BACKGROUND

Complete Nutrition Franchising, LLC ("CNF") is a franchisor of retail stores offering nutritional supplements, health and beauty products, and other related healthcare items to the general public and it permits franchisees to use the "Complete Nutrition" trade name, trademark, and its system of operating procedures to sell the foregoing products. Plaintiff Donovan Middleton executed a franchise agreement with CNF on December 18, 2015 to open and operate a Complete Nutrition franchise store in Las Vegas, Nevada. (Dkt. #45, ¶ 1.) Plaintiff Donovan Middleton assigned this franchise agreement to Plaintiff Harvester Nutrition, LLC on June 15, 2016 (Plaintiff Donovan Middleton and Plaintiff Harvester Nutrition, LLC are referred to herein, together, as "Plaintiffs"). (*Id.*) Plaintiff Harvester Nutrition, LLC executed a franchise agreement on June 28, 2017 with CNF to open a Complete Nutrition franchise in Grand Junction, Colorado. (*Id.* at ¶ 3.) Plaintiff Harvester Nutrition, LLC also executed a franchise agreement with CNF to open a Complete Nutrition franchise in Henderson, Nevada (the three franchise agreements, together, are referred to herein as the "Franchise Agreements"). (*Id.* at ¶ 4.) Plaintiffs' claims in the Amended Complaint (the "Complaint") allegedly arise out of these agreements. Plaintiffs' Complaint, however, fails as a matter of law because Plaintiffs have not and cannot state a claim for which relief can be granted.

Plaintiffs claim that they were misled by CNF with respect to the financial profitability of owning a Complete Nutrition franchise prior to executing the Franchise Agreement. In support of its claims, Plaintiffs point to a variety of communications that they allegedly reviewed online and

through other sources. Plaintiffs' reliance on these communications, however, runs in direct contradiction to the merger provision in the Franchise Agreement, which provides:

> **<u>Entire Agreement.</u>** The preambles and exhibits are a part of this Agreement, which, together with any riders or addenda signed at the same time as this Agreement, constitutes Franchisor's and Franchisee's entire agreement and supersedes all prior and contemporaneous oral or written agreements and understandings between Franchisor and Franchisee relating to the subject matter of this agreement. There are no other oral or written representations, warranties, understandings or agreements between Franchisor and Franchisee relating to the subject matter of this Agreement. Notwithstanding the foregoing, nothing in this Agreement shall disclaim or require Franchisee to waive reliance on any representation that Franchisor made in the disclosure statement (including its exhibits and amendments) that Franchisor delivered to Franchisee or its representative. Except as provided in Sections 17.B. and 18.F, nothing in this Agreement is intended nor deemed to confer any rights or remedies upon any person or legal entity not a party to this Agreement.

(Dkt. #45, Exhibit 17, p. 31, § 18.M; Dkt. #45, Exhibit 18, p. 33, § 18.N; Dkt. #45, Exhibit 19, p. 33, § 18.N). It is clear that the parties intended that the Franchise Agreements, in conjunction with the franchise disclosure documents, be the exclusive document to govern their relationship. Plaintiffs therefore cannot claim reliance on extraneous communications.

Additionally, several of the communications identified by Plaintiffs did not even originate from CNF, nor did they originate from Defendants Complete Nutrition Franchise Holdings, LLC ("CNFH"), CR Holdings, LLC ("CR"), Dominus Health Intermediate Holdco, LLC ("DHIH"), and Dominus Health Holdings, LLC ("DHH"). For example, Exhibit 3 attached to the Complaint appears to have been printed from www.franchisefinderteam.com, a website that Plaintiffs do not allege has any association with the Defendants. (Dkt. #45, Ex. 3.) The same can be said for Exhibits 5 and 6, which are website printouts from www.franfinders.com and www.franchisebuy.com, respectively. (Dkt. #45, Ex. 5-6.) Plaintiffs' reliance on these

3

communications violates the express terms of the Franchise Agreements and defies common sense.

Finally, while CNF and Plaintiffs are the only parties to the Franchise Agreements, Plaintiffs seek to allege causes of action against parties that were not part of the underlying contract: CNFH, CR, DHIH, and DHH. Plaintiffs do not allege that they had any involvement whatsoever with these entities. Rather, Plaintiffs attempt to plead that these entities should be liable for CNF's actions pursuant to the doctrine of piercing the corporate veil. As Plaintiffs cannot and have not sufficiently pled a cause of action for piercing the corporate veil, Defendants CNFH, CR, DHIH, and DHH have no place in these proceedings and should be dismissed.

In sum, all counts of Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

A complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under Rule 12(b)(6), "the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff." *Hager v. Arkansas Dept. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, courts must not presume the truth of legal conclusions merely couched as factual allegations. *Id*. In order to avoid dismissal, a complaint must contain sufficient facts, as opposed to mere conclusions. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007), quoting *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir. 2002). Courts should dismiss complaints based on "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## ARGUMENT

Plaintiffs have not and cannot plead sufficient facts to sustain claims for piercing the corporate veil (Count 16), fraudulent misrepresentation/fraudulent concealment (Counts 4, 9, 14), negligent misrepresentation (Counts 3, 8, 13), breach of contract (Counts 1, 6, 11), breach of the implied warranty of good faith and fair dealing (Count 2, 7, 12), or violation of the Nebraska Deceptive Trade Practices Act (Count 5, 10, 15). Those counts should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### *Count 16—Piercing the Corporate Veil—All Defendants*

Count 16, entitled "Piercing the Corporate Veil," must be dismissed. Piercing the corporate veil is not itself a stand-alone cause of action. Further, even if the Court were to recognize piercing the corporate veil as its own cause of action, Count 16 must still be dismissed because Plaintiffs have not sufficiently pled facts to pierce the corporate veil. Further, and because Defendants CNFH, CR, DHIH, and DHH are only named for veil-piercing purposes, the Court should dismiss all claims made against those Defendants and dismiss them from this lawsuit entirely.

### A.   Piercing the Corporate Veil is Not a Cause of Action

Count 16 fails and should be dismissed because piercing the corporate veil is not a cause of action. *See Tamko Roofing Products, Inc. v. Smith Engineering Co.*, 450 F.3d 822, n. 2 (8th Cir. 2006) ("[P]iercing the corporate veil under an alter ego theory is best thought of as a remedy to enforce a substantive right, and not as an independent cause of action."). Rather, it is an equitable remedy invoked to impose liability on corporate shareholders for the debts of the corporation. *SBC v. Cutler*, 23 Neb.App. 939, 946 (Neb. Ct. App. 2016). Plaintiffs cannot allege,

as a matter of law, a claim for piercing the corporate veil as a stand-alone cause of action. (Dkt. #45, ¶¶ 160-166.)

      B.    <u>Plaintiffs have not Sufficiently Pled Facts to Pierce the Corporate Veil</u>

Even if Plaintiffs could allege a stand-alone cause of action under Count 16, which the Court should find that they cannot, this claim still fails because Plaintiffs have not and cannot plead sufficient facts to state a cause of action.

"Generally, a corporation is viewed as a complete and separate entity from its shareholders and officers, who are not, as a rule, liable for the debts and obligations of the corporation." *SBC v. Cutler*, 23 Neb.App. 939, 946-47 (Neb. Ct. App. 2016). "A court will disregard a corporation's identity ***only*** where the corporation has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another. *Christian v. Smith*, 276 Neb. 867, 883 (Neb. 2008) (emphasis added). "A corporation's identity as a separate legal entity will be preserved, as a general rule, until sufficient reason to the contrary appears." *SBC*, 23 Neb.App. at 947.

In connection with the foregoing, Plaintiffs are required to allege (1) that the corporation was under the actual control of the shareholder or other entity, and (2) that the shareholder or other entity exercised such control to commit a fraud or other wrong in contravention of the Plaintiffs' rights. *Christian*, 276 Neb. at 883. The factors to be used in determining whether to disregard the corporate entity based upon fraud include, but are not limited to:

> (1) grossly inadequate capitalization, (2) insolvency of the debtor corporation at the time the debt is incurred, (3) diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper purposes, and (4) the fact that the corporation is a mere façade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity.

6

*Christian*, 276 Neb. at 883; *see also Wolf v. Walt*, 247 Neb. 858, 866 (Neb. 1995) (plaintiff has the burden of pleading these factors by a preponderance of the evidence).

The first factor, inadequate capitalization, means capitalization that is small in relation to the nature of the business and the risks involved. *Wolf*, 247 Neb. at 865. The second factor, insolvency, refers to when a corporation is "unable to pay its debts as they become due in the usual course of its business, or if it has an excess of liabilities over its assets at a fair valuation." *Christian*, 276 Neb. at 884. The third factor arises "[w]hen a principal shareholder appropriates and uses corporate funds and property for his personal purposes and thereby defrauds and causes damages to creditors, the shareholder can be held individually liable for the corporate debt." *Id*. The fourth factor, requires that the corporation exists as "a mere shell, serving no legitimate business purpose, and is used as an intermediary to perpetuate fraud on the creditors." *Id*. at 885.

Here, Plaintiffs have not pled sufficient facts supporting any of the foregoing factors. Count 16 consists of either conclusory allegations or allegations which are unrelated to the veil-piercing factors. For example, in seeking to allege facts regarding control of CNF, Plaintiffs merely allege that DHH "made an investment" into the Complete Nutrition system through DHIH and "assumed control and management of the Complete Nutrition franchise system." (Dkt. #45, ¶¶ 160-161.) Further, Plaintiffs state that CNFH and CR "became wholly-owned by Defendant [DHH]." (*Id.*, ¶ 162.) These allegations are conclusory and thus insufficient to establish that these entities controlled CNF. Plaintiffs allege no facts in support of this element.

Plaintiffs also conclude that at the time that CNFH, CR, DHIH, and DHH allegedly came into control of CNF, CNF was insolvent and undercapitalized. (*Id.*, ¶¶ 163-164.) Plaintiffs allege no facts to reach this conclusion. Moreover, insolvency and undercapitalization are to be determined at the time of incorporation. *Wolf*, 247 Neb. at 865. Plaintiffs offer no allegations

7

regarding CNF's solvency or capitalization at the time that it was incorporated. Accordingly, conclusions regarding alleged insolvency at the time these defendants came into control of CNF are insufficient to state a claim under rule 12(b)(6).

Finally, Plaintiffs allege that DHH "entered into an agreement with its secured lender which has resulted in Defendant [CNF] being unable to provide any services to the Plaintiffs and to, in effect, render it judgment proof." (Dkt. #45, ¶ 165.) Plaintiffs allege that this action was taken to divert assets of CNF for an improper purpose, to protect DHH from claims from its lender, and made it impossible for CNF to operate. (*Id*.) These allegations have nothing to do with any of the factors to be considered in a veil-piercing analysis, and should be disregarded.

In light of the foregoing, Plaintiffs fail to adequately plead a claim to pierce the corporate veil. Plaintiffs offer only conclusions devoid of factual support in an attempt to establish that Defendants CNFH, CR, DHIH, and DHH controlled CNF. Plaintiffs offer no factual allegations regarding insolvency, inadequate capitalization, or use of the corporate form as a shell or façade to further the personal dealings of the primary shareholder(s). *See Burke v. Citigroup, Inc.*, No. 4:06CV3194, 2006 WL 3483787, at *4 (D. Neb. Nov. 29, 2006) (dismissing veil piercing claim on the grounds that the plaintiff had failed to plead the existence of the factors considered in determining whether the corporate veil should be pierced). Count 16 of Plaintiffs' Complaint seeking to pierce the corporate veil must therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Further, and because Defendants CNFH, CR, DHIH, and DHH are only named for veil-piercing purposes, the Court should dismiss all claims made against those Defendants.

*Counts 4, 9, 14—Fraudulent Misrepresentation/Fraudulent Concealment—All Defendants*

Plaintiffs allege in Counts 4, 9, and 14 of the Complaint that all Defendants are liable for fraudulent misrepresentation/fraudulent concealment. However, Plaintiffs fail to plead fraud with

8

sufficient particularity under Rule 9(b). The "shotgun pleading" approach taken by the Plaintiffs, alleging that all five Defendants have engaged in fraudulent conduct without specifying what allegedly fraudulent communications originated from who, fails to satisfy the pleading requirements under Rule 9(b). Further, Plaintiffs claim to have relied upon statements outside the Franchise Agreement and the Franchise Disclosure Document, in violation of the merger clause contained in the Franchise Agreement. Accordingly, Counts 4, 9, and 14 of Plaintiffs' Complaint should be dismissed.

### A.   Failure to Satisfy the Pleading Standard for Fraud

Plaintiffs, in conclusory fashion, claim in Counts 4, 9, and 14 that CNF made false representations and fraudulently concealed material information. (Dkt. #45, ¶¶ 84-89, 115-120, 146-151.) Plaintiffs' fraud claims fail because they are subject to a heightened pleading standard under Rule 9(b), which requires Plaintiffs to plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiffs do not satisfy the pleading requirements of Rule 9(b) and, therefore, Count IV must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

As a matter of law, "[a] plaintiff who makes allegations based on fraud must state with particularity the circumstances constituting the fraud[.]" *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012). Plaintiffs must plead "the time, place and contents of false representations, as well as the identity of the person making the representation and what was obtained or given up thereby" in order to state a claim. *See Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982). Plaintiffs must also state facts establishing the "who, what, where, when, and how" underlying the alleged fraud. *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917

(8th Cir. 2007) (quoting *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 1982)).

Plaintiffs have failed to meet this heightened standard of particularity under Counts 4, 9, or 14. (*See* Dkt. #45, ¶¶ 81-86, 115-120, 146-151.) Further, many of the alleged statements by CNF or its representatives or affiliates cannot, by law, constitute fraud. *See id.*, at ¶ 53 (identifying the nutrition store business as a "BOOMING INDUSTRY," and noting CNF's "Unique Business Model" and "EXCLUSIVE SUPPLEMENT LINES"). "To constitute fraud, a misrepresentation must be an assertion of fact, not merely an expression of opinion. Hence, fraud cannot be predicated on mere 'sales talk' or 'puffing.'" *Ed Miller & Sons, Inc. v. Earl*, 243 Neb. 708, 720 (Neb. 1993). The vast majority of the communications that Plaintiffs cite as "fraudulent" should therefore be disregarded.

Further, Plaintiffs allege their fraudulent misrepresentation/fraudulent concealment claim against all Defendants. *See* Dkt. #45, ¶¶ 84-89, 115-120, 146-151 ("*Defendants* fraudulently misrepresented and/or concealed facts… Plaintiff[s] reasonably and justifiably relied upon the statements and information of *Defendants* . . ." (emphasis added)). Such "shotgun-style" pleadings are disfavored in the judicial system and fail to meet the heightened pleadings requirements for fraud under Rule 9(b). *See Wagner v. First Horizon Pharmaceutical Corp*, 464 F.3d 1273, 1279 (11th Cir. 2006).

    B.   <u>The Merger Provision of the Franchise Agreements Expressly Bars Plaintiffs' Reliance on Statements Outside of the Franchise Agreement or Franchise Disclosure Documents</u>

In addition to Plaintiffs' failure to sufficiency plead fraud, Plaintiffs' claim should be dismissed under the merger provision present in the Franchise Agreements. *See Gilbert Central Corp. v. Overland National Bank*, 232 Neb. 778, 782 (Neb. 1989) citing *Reller v. Ankeny*, 160

Neb. 47, 53 (Neb. 1955) ("The contents of such an exhibit prevail over any allegation of the pleading that is inconsistent therewith and such an exhibit may be considered by the court without reference to the legal effect thereof as alleged in the pleading."). The Franchise Agreements, attached to the Complaint as Exhibit 17, 18, and 19 provide:

> **Entire Agreement.** The preambles and exhibits are a part of this Agreement, which, together with any riders or addenda signed at the same time as this Agreement, constitutes Franchisor's and Franchisee's entire agreement and supersedes all prior and contemporaneous oral or written agreements and understandings between Franchisor and Franchisee relating to the subject matter of this agreement. There are no other oral or written representations, warranties, understandings or agreements between Franchisor and Franchisee relating to the subject matter of this Agreement. Notwithstanding the foregoing, nothing in this Agreement shall disclaim or require Franchisee to waive reliance on any representation that Franchisor made in the disclosure statement (including its exhibits and amendments) that Franchisor delivered to Franchisee or its representative. Except as provided in Sections 17.B. and 18.F, nothing in this Agreement is intended nor deemed to confer any rights or remedies upon any person or legal entity not a party to this Agreement.

(Dkt. #45, Exhibit 17, p. 31, § 18.M; Dkt. #45, Exhibit 18, p. 33, § 18.N; Dkt. #45, Exhibit 19, p. 33, § 18.N). Plaintiffs have pled themselves out of court. Plaintiffs' claim that they reasonably and justifiably relied upon statements and information is outside the scope of and defeated by the Franchise Agreements. Counts 4, 9, and 14 should be dismissed with prejudice under Rule 12(b)(6).

*Counts 3, 8, 13—Negligent Misrepresentation—All Defendants*

Negligent misrepresentation, like fraud, is subject to the same heightened pleading standards as fraud under Federal Rule of Civil Procedure 9(b). *Farm Credit Services of America, FLCA v. Haun*, 734 F3d 800, 805 (8th Cir. 2013). Plaintiffs' allegations of negligent misrepresentation fail to meet the minimum required level of specificity necessary to sustain a claim for negligent misrepresentation. (Dkt. #45, ¶¶ 78-83, 109-114, 140-145.) As with

11

Plaintiffs' fraud claims, Plaintiffs fail to allege the "who, what, where, when, and how" required to plead this claim. *See BJC Health System*, 478 F.3d at 917. Counts 3, 8, and 13 of Plaintiffs' Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

*Counts 1, 6, 11—Breach of Contract—All Defendants*

Plaintiffs also fail to plead a cause of action for breach of contract. "In order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty." *Phipps v. Skyview Farms, Inc.*, 259 Neb. 492, 498 (2000). Here, Plaintiffs have failed to plead that they have complied with the obligations under the Franchise Agreements. Counts 1, 6, and 11 of the Amended Complaint must be dismissed.

*Counts 2, 7, 12—Breach of the Implied Covenant of Good Faith and Fair Dealing—All Defendants*

Plaintiffs' allegations in Counts 2, 7, and 12 of their claims of breach of the implied covenant of good faith and fair dealing do not establish facts showing such an impairment. (Dkt. #45, ¶¶ 72-77, 103-108134-139.) "The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract." *Spanish Oaks, Inc. v. Hy-Vee, Inc.*, 265 Neb. 133, 143 (Neb. 2003). "[T]he implied covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." *Id*. "A violation of the covenant of good faith and fair dealing occurs **only** when a party violates, nullifies, or significantly impairs any benefit of the contract." *In re Application of Northeast Neb. Pub. Power Dist.*, 300 Neb. 237, 254 (Neb. 2018) (emphasis added).

12

Plaintiffs allege that all Defendants did not provide "a sustainable franchise system, ongoing support, nor marketing efforts[.]" (Dkt. #45, ¶¶ 76, 107, 138.) Further, Plaintiffs claim that Defendants "took actions solely to benefit Defendants at the expense of Plaintiff[s] in direct violation of the implied covenant of good faith and fair dealing." (*Id.*) These allegations are vague, and fail to identify any specific benefit that the Plaintiffs anticipated receiving under the terms of the contract. Additionally, Plaintiffs' allegations are conclusory, they fail to identify how Defendants' alleged conduct violated, nullified, or otherwise significantly impaired their benefit(s) under the contract. *Coffey v. Planet Group, Inc.*, 287 Neb. 834, 843-44 (Neb. 2014) (a cause of action for violation of the implied covenant of good faith and fair dealing requires proof that the other party somehow violated, nullified, or significantly impaired a benefit of the contract, as that is the only way that such a violation can exist). Finally, Plaintiffs have failed to allege that they have fully performed their obligations under the contracts. A party cannot justifiably expect to receive certain benefits under a contract when that party has not performed its own contractual obligations. *See RSUI Indem. Co. v. Bacon*, 282 Neb. 436, 444 (Neb. 2011) ("The nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties."). Counts 2, 7, and 12 of Plaintiffs' Complaint for breach of implied warranty of good faith and fair dealing should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

*Counts 5, 10, 15—Violation of the Nebraska Deceptive Trade Practices Act—All Defendants*

Plaintiffs' claim that Defendants have violated the Nebraska Deceptive Trade Practices Act (the "Act") must be dismissed. The Act provides that a person engages in a deceptive trade practice when he "(16) [u]ses any scheme or device to defraud by means of . . . obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises[.]" Neb.

13

Stat. § 87-302(16)(i). It also provides that "[a]n unconscionable act or practice by a supplier in connection with a consumer transaction shall be a violation of [the Act]." Neb. Stat. § 87-303.01.

Plaintiffs only conclusorily allege that all Defendants' actions as described in the Complaint are "unconscionable actions or courses of actions and constitute violations of [the Act]." (Dkt. #45, ¶¶ 92, 123, 154.) None of the Defendants, however, are alleged to be suppliers in a consumer transaction. Neb. Stat. § 87-303.01. Further, Defendants' actions in this case, as plead, do not rise to the level of unconscionability. "The unconscionability of an act or practice shall be a question of law for the court." Neb. Stat. § 87-303.01. The basic test for unconscionability is:

> whether in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract[.] The principle is one of the prevention of oppression and unfair surprise . . . and not of disturbance of allocation of risks because of superior bargaining power.

*Melcher v. Boesch Motor Co.*, 188 Neb. 522, 526 (Neb. 1972). Applying this reasoning, Defendants' alleged actions and omissions do not and cannot constitute unconscionable actions.

Finally, the merger provision in Plaintiffs' Franchise Agreement defeats and therefore bars any claims based on communications to open a Complete Nutrition franchise. (Dkt. #45, Ex. 17, p. 31, § 18.M; Dkt. #45, Exhibit 18, p. 33, § 18.N; Dkt. #45, Exhibit 19, p. 33, § 18.N.) Plaintiffs are therefore precluded from seeking relief and Counts 5, 10, and 15 of their Complaint must be dismissed.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants Complete Nutrition Franchising, LLC, Complete Nutrition Franchise Holdings, LLC, CR Holdings, LLC, Dominus Health

Intermediate Holdco, LLC, and Dominus Health Holdings, LLC respectfully pray for an order from this Court dismissing Plaintiffs Donovan Middleton and Harvester Nutrition, LLC's Amended Complaint, with prejudice, and for any further relief this Court deems just.

Dated:  February 4, 2019                    Respectfully submitted,

                                            Complete Nutrition Franchising, LLC, Defendant

                                            By:  /s/ Konstantinos Armiros
                                                 Eugene J. Geekie, Jr. (admitted pro hac vice)
                                                 Konstantinos Armiros (admitted pro hac vice)
                                                 Thomas A. Laser (admitted pro hac vice)
                                                 Saul Ewing Arnstein & Lehr LLP
                                                 161 N. Clark Street, Suite 4200
                                                 Chicago, Illinois 60601
                                                 Phone:    (312) 876-7100
                                                 Email:    eugene.geekie@saul.com
                                                           konstantinos.armiros@saul.com
                                                           tom.laser@saul.com

                                                 and

                                                 Erin Ebeler Rolf, No. 23923
                                                 Woods & Aitken LLP
                                                 301 S 13th Street, Suite 500
                                                 Lincoln, Nebraska 68508
                                                 Phone:    402-437-8500
                                                 Email:    eerolf@woodsaitken.com

33707169.1

15

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was filed using the CM/ECF system on February 4, 2019, which transmitted the same to all counsel registered to receive service via the same.

/s/ Thomas A. Laser
Thomas A. Laser