IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DONOVAN MIDDLETON and HARVESTER NUTRITION, LLC, | |
| Plaintiffs, | **8:18CV115** |
| v. | **MEMORANDUM AND ORDER** |
| COMPLETE NUTRITION FRANCHISING, LLC; COMPLETE NUTRITION FRANCHISE HOLDINGS, LLC; CR HOLDINGS, LLC; DOMINUS HEALTH INTERMEDIATE HOLDCO, LLC; and DOMINUS HEALTH HOLDINGS, LLC, | |
| Defendants. | |
| EDGAR ROJAS and CHRISTINA SOARES, | |
| Plaintiffs, | **8:18CV543** |
| v. | |
| COMPLETE NUTRITION FRANCHISING, LLC; COMPLETE NUTRITION FRANCHISE HOLDINGS, LLC; CR HOLDINGS, LLC; DOMINUS HEALTH INTERMEDIATE HOLDCO, LLC; and DOMINUS HEALTH HOLDINGS, LLC, | |
| Defendants. | |
| HERMAN HOURIE and NUTRITION CASTLE, LLC, | |
| Plaintiffs, | **8:18CV544** |

v.

COMPLETE NUTRITION
FRANCHISING, LLC; COMPLETE
NUTRITION FRANCHISE HOLDINGS,
LLC; CR HOLDINGS, LLC; DOMINUS
HEALTH INTERMEDIATE HOLDCO,
LLC; and DOMINUS HEALTH
HOLDINGS, LLC,

Defendants.

BRIGHT FUTURE HOLDINGS, LLC,

Plaintiff,                                    **8:18CV545**

v.

COMPLETE NUTRITION
FRANCHISING, LLC; COMPLETE
NUTRITION FRANCHISE HOLDINGS,
LLC; CR HOLDINGS, LLC; DOMINUS
HEALTH INTERMEDIATE HOLDCO,
LLC; and DOMINUS HEALTH
HOLDINGS, LLC,

Defendants.

VIVIFY, INC.,

Plaintiff,                                    **8:18CV546**

v.

COMPLETE NUTRITION
FRANCHISING, LLC; COMPLETE
NUTRITION FRANCHISE HOLDINGS,
LLC; CR HOLDINGS, LLC; DOMINUS
HEALTH INTERMEDIATE HOLDCO,
LLC; and DOMINUS HEALTH
HOLDINGS, LLC,

|  |  |
|---|---|
| Defendants. | |

| | |
|---|---|
| WARRIOR FITNESS & NUTRITION, LLC, | |
| Plaintiff, | **8:18CV547** |
| v. | |
| COMPLETE NUTRITION FRANCHISING, LLC; COMPLETE NUTRITION FRANCHISE HOLDINGS, LLC; CR HOLDINGS, LLC; DOMINUS HEALTH INTERMEDIATE HOLDCO, LLC; and DOMINUS HEALTH HOLDINGS, LLC, | |
| Defendants. | |

| | |
|---|---|
| KATHERINA JERAK, | |
| Plaintiff, | **8:18CV548** |
| v. | |
| COMPLETE NUTRITION FRANCHISING, LLC; COMPLETE NUTRITION FRANCHISE HOLDINGS, LLC; CR HOLDINGS, LLC; DOMINUS HEALTH INTERMEDIATE HOLDCO, LLC; and DOMINUS HEALTH HOLDINGS, LLC, | |
| Defendants. | |

| | |
|---|---|
| M.G. NUTRITION, LLC, | |
| Plaintiff, | **8:18CV549** |
| v. | |

3

<table>
<tr><td>

COMPLETE NUTRITION
FRANCHISING, LLC; COMPLETE
NUTRITION FRANCHISE HOLDINGS,
LLC; CR HOLDINGS, LLC; DOMINUS
HEALTH INTERMEDIATE HOLDCO,
LLC; and DOMINUS HEALTH
HOLDINGS, LLC,

Defendants.

</td></tr>
</table>

Pending before the Court are a slew of nearly identical motions to dismiss (Filing No. 54 in 8:18CV115, 8:18CV543, 8:18CV545, 8:18CV547, 8:18CV548, and 8:18CV549, Filing No. 58 in 8:18CV544, and Filing No. 55 in 8:CV546) made pursuant to Federal Rule of Civil Procedure 12(b)(6) by defendants Complete Nutrition Franchising, LLC, Complete Nutrition Franchise Holdings, LLC, CR Holdings, LLC, Dominus Health Intermediate Holdco, LLC ("DHIH"), and Dominus Health Holdings, LLC (collectively, "defendants") in the above-captioned cases. The defendants seek dismissal of the amended complaints (Filing No. 45 in each case) filed by plaintiffs Donovan Middleton ("Middleton"), Harvester Nutrition, LLC, Edgar Rojas, Christina Soares, Herman Hourie, Nutrition Castle, LLC, Bright Future Holdings, LLC, Vivify, Inc., Warrior Fitness & Nutrition, LLC ("Warrior Fitness"), Katherina Jerak, and M.G. Nutrition, LLC (collectively, "plaintiffs"). For the reasons stated below, the defendants' motions will be granted.

## I.   BACKGROUND[1]

The plaintiffs allege the defendants form the Complete Nutrition franchise system. As described by the plaintiffs, the defendants franchise "retail stores offering nutritional supplements, health and beauty products[,] and other related items to the general public using the 'Complete Nutrition' trade name, trademark[,] and system of operating

---

[1]"When ruling on a motion to dismiss, the [C]ourt must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005). The background and discussion are set forth pursuant to that standard.

4

procedures."  The plaintiffs have extensively chronicled the morphing of various Complete Nutrition franchise entities, including changes in parent companies and controlling interests.  Those details are not necessary to this Court's analysis.  Suffice it to say, the plaintiffs allege that each of the defendants is connected to one another through various forms of ownership in the franchise system.  All the plaintiffs are or were independent franchisees of Complete Nutrition who entered into separate franchise agreements over the course of seven years.

The plaintiffs collectively filed this suit (Filing No. 1 in each case) on March 9, 2018, asserting causes of action arising from those franchise relationships for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligent misrepresentation;  (4) fraudulent misrepresentation and fraudulent concealment; (5) violation of the Nebraska Deceptive Trade Practices Act ("NDTPA"), Neb. Rev. Stat. § 87-301 *et seq.*; (6) violation of the Florida Franchise Act, Fla. Stat. § 817.416; and (7) violation of the Indiana Deceptive Franchise Practices Act ("IDFPA"), Ind. Code § 23-2-2.7-1 *et seq.*  In short, the plaintiffs contend the defendants' marketing materials, sales pitches, and other representations misled them about the support, benefits, and earnings they would receive on becoming franchisees.

After concluding the plaintiffs' claims arise from "separate and distinct transactions," on November 19, 2018, the magistrate judge severed (Filing No. 44 in each case) the plaintiffs' claims.  On December 17, 2018, the plaintiffs then each filed practically identical amended complaints asserting largely the same claims as they advanced in their original complaint.[2]  The defendants filed the present motions on February 4, 2019.

After each of the defendants moved to dismiss, the plaintiffs consented to the Court dismissing their NDTPA claims, so those claims are dismissed.  The Court will address the

---

[2]Though multiple plaintiffs originally asserted claims under the Florida Franchise Act, no plaintiffs advance those claims in their amended complaints.

plaintiffs' remaining claims and their informal requests for leave to amend certain claims in their amended complaints.

## II.   DISCUSSION

### A.   Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are generally not required; "the statement need only 'give the defendant fair notice'" of the nature and grounds of the claim.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In contrast, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard on fraud claims, requiring parties to "state with particularity the circumstances constituting fraud."  "[T]he complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1070 (8th Cir. 2016) (quoting *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006)).  In other words, the plaintiff must plead "the who, what, when, where, and how: the first paragraph of any newspaper story."  *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013) (quoting *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011)).  "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (quoting *Commercial Prop. Invs. Inc. v. Quality Inns Int'l Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

To survive a Rule 12(b)(6) motion under either Rule 8(a) or Rule 9(b), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

### B.    Nebraska Law

The parties appear to agree "[t]he law of Nebraska, the forum state, governs this diversity action." *Baumann v. Zhukov*, 802 F.3d 950, 953 (8th Cir. 2015). The parties apply Nebraska law to advance their substantive arguments, [3] which is consistent with the choice-of-law provision found in each of the franchise agreements. The Court will do the same. *See Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007).

### C.    Fraudulent Misrepresentation and Fraudulent Concealment

The plaintiffs all assert substantively identical fraudulent-misrepresentation and fraudulent-concealment claims against each of the defendants. The defendants argue these claims must be dismissed because the plaintiffs failed to satisfy Rule 9(b)'s heightened pleading standard for fraud. The Court agrees.

Rule 9(b)'s heightened pleading standard applies to fraudulent-misrepresentation and fraudulent-concealment claims. *See generally Freitas*, 705 F.3d at 438. Under Nebraska law, a plaintiff must allege the following to state a fraudulent-misrepresentation claim:

> (1) A representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) the representation was made with the intention that the plaintiff should rely on it; (5) the plaintiff did so rely on it; and (6) the plaintiff suffered damage as a result.

---

[3]There is one exception. In case number 8:18CV547, Warrior Fitness asserts one claim under Indiana law, but as the Court explains below, that is inconsequential because that claim still fails.

*Cullinane v. Beverly Enters.-Neb., Inc.*, 912 N.W.2d 774, 792-93 (Neb. 2018).   Only factual assertions, not expressions of opinion, may constitute fraud.  *Ed Miller & Sons, Inc. v. Earl*, 502 N.W.2d 444, 453 (Neb. 1993).  As such, "fraud cannot be predicated on mere 'sales talk' or 'puffing.'"  *Id.*

In some cases, liability may be imposed where a third-party repeats a fact told to them by the maker of a misrepresentation.  *See Knights of Columbus Council 3152 v. KFS BD, Inc.*, 791 N.W.2d 317, 327 (Neb. 2010).  Liability arises from such a third-party communication only if "the defendant intended the plaintiff to learn of and rely on it in the transaction or type of transaction involved, or had a particular reason to believe that the plaintiff would do so."  *Id.*

> To state a claim for fraudulent-concealment, a plaintiff must allege that:
>
> (1) The defendant had a duty to disclose a material fact; (2) the defendant, with knowledge of the material fact, concealed the fact; (3) the material fact was not within the plaintiff's reasonably diligent attention, observation, and judgment; (4) the defendant concealed the fact with the intention that the plaintiff act or refrain from acting in response to the concealment or suppression; (5) the plaintiff, reasonably relying on the fact or facts as the plaintiff believed them to be as the result of the concealment, acted or withheld action; and (6) the plaintiff was damaged by the plaintiff's action or inaction in response to the concealment.

*Id.* at 334 (emphasis omitted).  Parties to a business transaction bear "a duty to exercise reasonable care to disclose" a variety of matters before that transaction is consummated. *Streeks, Inc. v. Diamond Hill Farms, Inc.*, 605 N.W.2d 110, 118 (Neb. 2000) (quoting Restatement (Second) of Torts § 551(2) (1977)).

In the present cases, each plaintiff first generally alleges (the "general allegations") that the "[d]efendants made misrepresentations that it [sic] knew or should have known to be false, and concealed material information that it [sic] had a duty to disclose."  The plaintiffs elaborate that the "[d]efendants fraudulently misrepresented and/or concealed"

8

information listed by the plaintiffs in other specifically referenced paragraphs of their amended complaints (the "named paragraphs").  Moreover, the plaintiffs contend that their franchise disclosure documents were misleading in that they "failed to account for differences in markets throughout the United States and other essential material and relevant information which would have clarified the information."  The plaintiffs allege that they reasonably and justifiably relied on that information to their "detriment in executing [their] franchise agreement[s]."

The plaintiffs believe that they have plead the circumstances constituting fraud with enough particularity to satisfy Rule 9(b).  They are incorrect.

First, the plaintiffs do not adequately allege the "who" of their claims.  Their general allegations merely provide that the "[d]efendants made misrepresentations . . . and concealed material information."   This neither specifies which of the five named defendants committed particular fraudulent acts nor identifies the defendants' specific representatives who engaged in individual acts of fraud.  *See Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 898 (8th Cir. 2014) (affirming the dismissal of a fraudulent-misrepresentation claim where the plaintiffs failed to allege the names of the specific company representatives who engaged in the fraud); *see also Weimer v. Int'l Flavors & Fragrance*, 240 F.R.D. 431, 437-38 (N.D. Iowa 2007) (dismissing fraud claims where the plaintiffs accused multiple defendants in a fraud scheme but failed to identify which of the defendants was responsible for individual acts of fraud).  The plaintiffs' named paragraphs are similarly imprecise, only broadly asserting that "Complete Nutrition, by and through its representatives and its own website, boasted information," while identifying neither the specific Complete Nutrition defendant nor the particular representatives referenced.[4] *See Wivell*, 773 F.3d at 898.

---

[4]The plaintiffs' supporting exhibits offer little clarity, with many implicating websites such as "franchisefinders.com" without explaining how those third-party communications can be attributed to the defendants. *See Knights of Columbus*, 791 N.W.2d

The plaintiffs' claims are also deficient in alleging the "how," "what," and "when" of the alleged fraud. The plaintiffs' list of information "Complete Nutrition" allegedly "boasted" offers no facts on how that information is false or falls short on making required disclosures.[5] *See BJC Health Sys.*, 478 F.3d at 917-18 (finding that a party did not adequately allege the "how" of an alleged fraud when it did not specifically explain how representations fell short). The plaintiffs' assertion that the defendants "fraudulently represented and/or concealed" that listed information is nothing more than a conclusory allegation which cannot meet muster under Rule 8(a), let alone Rule 9(b). *See Hager v. Ark. Dept. of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013) ("[L]egal conclusions . . . must be supported by factual allegations."). Moreover, the plaintiffs failed to allege with particularity *when* the defendants' fraudulent acts allegedly took place, merely implying they occurred at some undefined time prior to each plaintiff entering into its franchise agreement (which spans a seven-year period).[6] *See St. Luke's*, 441 F.3d at 556 ("[T]he complaint . . . must includ[e] when the acts occurred.").

In short, the plaintiffs have not sufficiently stated their fraudulent-misrepresentation and fraudulent-concealment claims under Rule 9(b), and they must be dismissed.

## D.    Negligent Misrepresentation

Middleton asserts a negligent-misrepresentation claim based on the defendants' alleged failure to inform him about the financial viability of the franchise and pending sale of the franchisor. The remaining plaintiffs assert negligent-misrepresentation claims based on the defendants' failure to inform them about that financial viability and DHIH's alleged

---

at 327 (explaining the defendant must intend for the plaintiff to learn of and rely on the information).

[5]Beyond that, many of the alleged misrepresentations, such as "THE BEST IN A BOOMING INDUSTRY," constitute sales talk, not facts, and cannot give rise to a fraudulent-misrepresentation claim. *See Earl*, 502 N.W.2d at 453.

[6]Again, the plaintiffs' supporting exhibits are no help as most either are not dated or dated after the last franchise agreement was entered into such that the plaintiffs could not have possibly relied on them when entering into the franchise agreements.

struggle to meet its obligations with its lender.  The defendants contend that these claims must be dismissed.

"Negligent misrepresentation has essentially the same elements as fraudulent misrepresentation, with the exception of the defendant's mental state," and is subject to the same heightened pleading standard.  *Lucky 7, LLC v. THT Realty, LLC*, 775 N.W.2d 671, 675 (Neb. 2009) (explaining one can be liable in a negligent-misrepresentation action even when acting honestly and in good faith).  Under Nebraska law,

> One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Agri Affiliates, Inc. v. Bones*, 660 N.W.2d 168, 175 (Neb. 2003) (emphasis omitted) (quoting *Gibb v. Citicorp Mrtg., Inc.*, 518 N.W.2d 910, 921 (Neb. 1994)).  "[T]he defendant need not know the statement is false"—carelessness suffices.  *Lucky 7*, 775 N.W.2d at 675.

In these cases, all the plaintiffs concede their "claim[s] of negligent misrepresentation [are] not based on an affirmative or explicit representation" made by the defendants.  Rather, the plaintiffs' claims rest on "the failure of the franchise to provide information to [the plaintiffs] concerning its financial distress."

Nebraska law clearly requires the plaintiffs to show that the defendants "supplie[d] false information" to state their claims for negligent misrepresentation.  *See Agri Affiliates*, 660 N.W.2d at 175.  Because the plaintiffs admittedly have not made—or even attempted to make—that showing, their claims fail.  *See Nielsen v. Thermo Mfg. Sys., LLC*, 8:17cv471, 2018 WL 1383182, at *6 (D. Neb. Mar. 19, 2018) (recognizing that a plaintiff

must allege a particular representation made by the defendant in order to state a negligent-misrepresentation claim under Nebraska law).

### E.    Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing

The plaintiffs assert matching breach-of-contract claims against the defendants. The defendants contend that the plaintiffs failed to state their claims because they did not plead that "they have complied with the obligations under the Franchise Agreements." The argument is persuasive.

Under Nebraska law, a plaintiff alleging a breach of contract "must plead the existence of a promise, its breach, damages, and compliance with any conditions precedent that activate the defendant's duty." *Kotrous v. Zerbe*, 846 N.W.2d 122, 126 (Neb. 2014). "A condition precedent is a condition which must be performed before the parties' agreement becomes a binding contract or a condition which must be fulfilled before a duty to perform the existing contract arises." *Cimino v. FirsTier Bank*, 530 N.W.2d 606, 613 (Neb. 1995).

This Court has previously dismissed a plaintiff's complaint under Nebraska law where the plaintiff failed to allege compliance with conditions precedent to activate the defendant's duty. *See Applied Risk Servs., Inc. v. Beemac Driver Mgmt., LLC*, 8:15CV110, 2016 WL 6269619, at *2 (D. Neb. Jan. 27, 2016) (citing *Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 804 (8th Cir. 2013) (affirming dismissal of a contract claim under Iowa law because the plaintiff failed to allege performance of his contractual obligations)). Here, the plaintiffs failed to allege that they complied with any conditions precedent. Their breach-of-contract claims must be dismissed.

The plaintiffs also assert claims against the defendants for breaching the implied covenant of good faith and fair dealing. That covenant "exists in every contract and requires that none of the parties to the contract do anything which will injure the right of

another party to receive the benefit of the contract." *In re Application of Ne. Neb. Pub. Power Dist.*, 912 N.W.2d 884, 896 (Neb. 2018). Because the plaintiffs' covenant claims arise in contract and the plaintiffs have not stated their contract claims, their covenant claims consequently fail. *See CI Oakhurst v. Commercial State Bank of Wausa*, 8:13CV340, 2014 WL 12605520, at *5 (D. Neb. Mar. 31, 2014) (agreeing "there must be a contract on which the duty of good faith and fair duty rests").

### F.   IDFPA

Warrior Fitness asserts that the defendants violated the IDFPA.[7] The defendants argue that this claim is "devoid of any factual allegations whatsoever." Warrior Fitness counters that viewing their IDFPA claim in conjunction with its other claims puts the defendants "on notice of the facts the [p]laintiff is using to support its claim under the [IDFPA]."

The relevant IDFPA provisions generally prohibit franchisors from (1) obtaining benefits from persons the franchisee transacts with unless those benefits are disclosed or remitted to the franchisee, Ind. Code §§ 23-2-2.7-1(4) and 23-2-2.7-2(6); (2) coercing the franchisee to order or accept goods and services, *id.* § 23-2-2.7-2(1)(i); (3) coercing the franchisee to participate in advertising at an expense above the maximum sum required by the franchise agreement, *id.* § 23-2-2.7-2(1)(iii); and (4) engaging in deceptive practices, *id.* § 23-2-2.7-2(8). The IDFPA applies only to franchise practices occurring *after* the formation of a franchise agreement. *See Volvo Trucks N. Am. v. Andy Mohr Truck Ctr.*, Cause No. 1:12-cv-448-WTL-DKL, 2014 WL 4794185, at *12-13 (S.D. Ind. Sept. 25, 2014). Claims under the IDFPA must satisfy not only Rule 8(a), but also Rule 9(b) if they sound in fraud. *See Cont'l Basketball Ass'n, Inc. v. Ellenstein Enters., Inc.*, 669 N.E.2d 134, 137-38 (Ind. 1996). Under Indiana law, misrepresentations related to future conduct

---

[7]The Court questions whether Warrior Fitness may assert a claim under Indiana law in this case, particularly considering the choice-of-law provision in its franchise agreement selecting Nebraska law. But that choice-of-law question is irrelevant because even if the Court applies Indiana law, Warrior Fitness has failed to state a claim.

cannot support an action for fraud.  *See Anderson v. Indianapolis Ind. AAMCO Dealers Adver. Pool*, 678 N.E.2d 832, 837 (Ind. App. 1997).

Here, Warrior Fitness's amended complaint merely recites IDFPA provisions and then alleges that "the actions of the [d]efendants, as fully set forth above, constitute violations of the [IDFPA]."  This epitomizes the type of pleading based on "labels and conclusions and a formulaic recitation of the elements of a cause of action" that fails to satisfy Rule 8(a).  *Twombly*, 550 U.S. at 555.

Even if the Court attempts to connect the dots for Warrior Fitness and matches the facts alleged throughout its amended complaint with the recited IDFPA provisions, Warrior Fitness's claim fails.  First, the majority of Warrior Fitness's allegations pertain to conduct the defendants allegedly engaged in *prior* to Warrior Fitness's franchise agreement, which cannot violate the IDFPA.  *See Volvo*, 2014 WL 4794185, at *13.  As for the first three IDFPA provisions referenced above, Warrior Fitness has alleged no facts to support a facially plausible claim.  *See Braden*, 588 F.3d at 595.  For example, on coercive advertising practices, Warrior Fitness alleges that the defendants offered inadequate support and deficient advertising relative to Warrior Fitness's contributions to the advertising budget.  Those facts do not create a reasonable inference that the defendants coerced Warrior Fitness to contribute a sum exceeding that required by its franchise agreement.  *See* Ind. Code § 23-2-2.7-2(1)(iii).

Warrior Fitness believes its allegations in its fraudulent-misrepresentation and negligent-misrepresentation claims put the defendants on notice of the facts supporting its IDFPA claims.  While those allegations more directly assert that the defendants engaged in deceptive practices (which the IDFPA prohibits), Warrior Fitness's allegations still fall short.  A deceptive-practices claim sounds in fraud and is subject to Rule 9(b)'s heightened pleading standard.  *See Continental*, 669 N.E.2d at 138.  For the same reasons stated with respect to the plaintiffs' fraudulent-misrepresentation and fraudulent-concealment claims,

Warrior Fitness has failed to allege with particularity the defendants' alleged deceptive practices. *See Wivell*, 773 F.3d at 898.  Accordingly, Warrior Fitness's IDFPA claims must be dismissed.

### G.      Piercing the Corporate Veil

Next, the plaintiffs include piercing the corporate veil as separate "cause[s] of action" in their amended complaints.  The defendants point out, and the plaintiffs concede, that piercing the corporate veil is not a stand-alone cause of action.  In the defendants' view, the "causes of action" should be dismissed.  The plaintiffs explain, however, that piercing the corporate veil is an equitable remedy and they "set out the piercing the corporate veil claim[s] in separate count[s] as a matter of organization, . . . and to put [the d]efendants on notice."

Given that piercing the corporate veil is a derivative theory of liability and the Court has dismissed all the plaintiffs' other claims, the Court finds that the plaintiffs' piercing-the-corporate-veil counts, to the extent that they are claims, must also be dismissed.  *Roos v. KFS BD, Inc.*, 799 N.W.2d 43, 50 (Neb. 2010).  The Court reaches that conclusion without considering the sufficiency of the plaintiffs' allegations.  *See Christian v. Smith*, 759 N.W.2d 447, 462 (Neb. 2008) ("A plaintiff seeking to pierce the corporate veil must allege and prove" the availability of the remedy.).

### H.      Leave to Amend

Finally, having concluded that all the plaintiffs' claims fail, the Court will now consider the plaintiffs' requests for leave to amend certain claims in their amended complaints.  Those requests are denied for failing to follow the local rules.  *See* NECivR 15.1.

Based on the foregoing,

IT IS ORDERED:

1.     The defendants' Motions to Dismiss (Filing No. 54 in 8:18CV115, 8:18CV543, 8:18CV545, 8:18CV547, 8:18CV548, and 8:18CV549, Filing No. 58 in 8:18CV544, and Filing No. 55 in 8:18CV546) are granted.

2.     The plaintiffs' informal requests for leave to amend their amended complaints are denied without prejudice.

3.     These cases are dismissed.

4.     A separate judgment will issue.

Dated this 8th day of May 2019.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge